
Randal S. Mashburn
U.S. Bankruptcy Judge
Dated: 9/9/2021



# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| David Silas Connor, | ) | Case No. 3:21-bk-00276 |
| | ) | Chapter 13 |
| Debtor. | ) | Judge Randal S. Mashburn |

___

| | | |
|---|---|---|
| | ) | |
| David Connor, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:21-ap-90037** |
| | ) | |
| Property Fund 629, LLC, 1 Public | ) | **(Lead Adversary Proceeding)** |
| Homes, LLC, Edward Dale Russell, | ) | |
| and Trent Notestine, | ) | |
| Defendants. | ) | |
| | ) | |

___

| | | |
|---|---|---|
| | ) | |
| David S. Connor and | ) | |
| Courtney T. Connor, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:21-ap-90051 |
| | ) | |
| MEB Loan Trust IV (aka | ) | (Removed from Williamson County |
| Specialized Loan Servicing, LLC), | ) | Circuit Court, Case No. 2021-100) |
| Edward Dale Russell, 1 Public | ) | |
| Homes, LLC, Property Fund 629, | ) | (Consolidated with 3:21-ap-90037) |
| LLC, Mackie Wolf Zientz & | ) | |
| Mann, P.C., and Eric Sox, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

An attorney involved in the eviction of a debtor in bankruptcy has been sued for violation of the automatic stay. He seeks refuge from a narrow exception in the

automatic stay statute that protects certain post-petition evictions that arise from a pre-petition judgment for possession. The reliance on this limited exception is misplaced under the facts of this case, and the motion to dismiss is denied.

David S. Connor, a debtor in a Chapter 13 proceeding, has sued eight different defendants over the foreclosure sale of his residence and the subsequent eviction of his family.[1] The litigation includes claims against two attorneys and a law firm involved in various aspects of the foreclosure and eviction. One of the attorneys sued is Edward Russell.

Mr. Russell became involved after the foreclosure was completed and after a state court writ of possession had been obtained for the eviction of Mr. Connor and his family. While Mr. Russell's role was circumscribed, his actions occurred after the bankruptcy was filed and after the automatic stay was in place.

Mr. Russell asserts that Mr. Connor cannot state a claim for relief because the continuation of the eviction was excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(22). That subsection of the Bankruptcy Code provides a safe harbor for lessors in certain defined circumstances where the lessor wins the race to the courthouse, obtaining an eviction order in state court before the tenant files a petition in bankruptcy court. There are multiple problems with trying to apply this limited exception to the facts alleged in the Complaint, but the most basic obstacles

---

[1] Mr. Connor alone filed a Complaint against Mr. Russell and several other defendants in Adv. Pro. No. 21-90037. The only claim asserted against Mr. Russell in that Complaint was for violation of the automatic stay under 11 U.S.C. § 362, which Mr. Russell has moved to dismiss. Mr. Connor and his wife together filed a Complaint against some of the same plus additional defendants in state court (the "State Court Complaint"), and that case was removed to Bankruptcy Court as Adv. Pro. No. 21-90051 and subsequently consolidated with Adv. Pro. No. 21-90037. The claims asserted against Mr. Russell in the State Court Complaint are asserted against all defendants generally. He does not address them in his motion to dismiss. For general background purposes, the two complaints and allegations therein are referred to collectively. The specific allegations against Mr. Russell relating to violation of the automatic stay are only asserted in the Complaint filed in Adv. Pro. No. 21-90037.

are that there is no "lease or rental agreement," and the evicting party was not a "lessor," as required by the statute.

## BACKGROUND

Mr. Connor owned a residence subject to two deeds of trust. The holder of the second deed of trust, MEB Loan Trust IV, foreclosed on the property on November 5, 2020. Property Fund 629, LLC was the purchaser at foreclosure. The deed transferring title to Property Fund 629 was recorded on November 20, 2020.

In his complaints, Mr. Connor raises numerous issues about the foreclosure and subsequent eviction process and accuses the eight defendants of multiple improprieties. Some of those defendants have filed their own motion to dismiss which is addressed in a separate opinion. Mr. Russell's motion to dismiss is limited to the claim for violation of the automatic stay, so the Court's focus in ruling on his motion is on the allegations tied to his role in the eviction process as it relates to the stay.

Tennessee law has a process known as "unlawful detainer" that provides a procedure for landlords to evict tenants. That process is initiated by filing a "detainer summons" in the state General Sessions Court where the property is located. On November 23, 2020, prior to Mr. Russell getting involved, 1 Public Homes LLC filed a detainer summons in Williamson County General Sessions Court, seeking possession of the property. Mr. Connor raises an issue in the Complaint about whether 1 Public Homes had any right to file the detainer action. He alleges that 1 Public Homes was not the purchaser at foreclosure and its deed was not recorded at the time it filed the detainer summons. Mr. Connor attached to the Complaint a copy of an unrecorded quitclaim deed transferring the property from Property Fund 629 to 1 Public Homes that purports to have been signed on November 16, 2020, thus potentially contradicting his allegations. (Compl. Ex. 14.) However, counsel for Property Fund 629 and 1 Public Homes stipulated during the hearing on the motion to dismiss that the signature date was incorrect, and 1 Public Homes did not have title ownership to the property when it filed the detainer summons, asserting the right to possession.

When the eviction matter first came before the General Sessions Court for hearing on December 7, 2020, the case was dismissed for failure to prosecute. 1 Public Homes got an attorney involved – not Mr. Russell – and was able to have the dismissal set aside. As a part of the same order setting aside the dismissal, 1 Public Homes obtained a default judgment against Mr. Conner on January 4, 2021, for possession of the property.

The eviction was scheduled for February 3, 2021, prompting Mr. Connor to file bankruptcy on January 28, 2021. According to the Complaint, having been informed that Mr. Russell now represented 1 Public Homes, Mr. Connor's bankruptcy counsel contacted Mr. Russell and informed him about Mr. Connor's bankruptcy filing. After receiving that information, Mr. Russell allegedly advised county officials to move forward with the eviction. Mr. Russell contends that he was justified in doing so because of the exception to the automatic stay.

To complicate matters further, the default judgment for a writ of possession was subsequently found by the General Sessions Court to be "void *ab initio*" based upon issues about the filing of the motion to set aside the dismissal, the fact that Mr. Connor had not been served with notice of the hearing, and because the General Sessions Court concluded that it had "relied on the highly questionable and unproven representations of counsel" for 1 Public Homes. This voiding of the order did not occur until March 3, 2021, roughly a month after the bankruptcy and eviction.

## DISCUSSION

### I. Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint." *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 751 (6th Cir. 2012).[2] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[2] Fed. R. Bankr. P. 7012 incorporates by reference Fed. R. Civ. P. 12(b) and makes it applicable in adversary proceedings.

U.S. 544, 570 (2007)). It is not enough to allege facts that show a "mere possibility of misconduct" or "that are merely consistent with a defendant's liability." *Ashcroft*, 556 U.S. at 678–79 (internal quotation marks omitted). The plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). This pleading standard is construed liberally. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020). "[I]f a plaintiff's claim is plausible, the availability of other explanations—even more likely explanations—does not bar the door to discovery." *16630 Southfield Ltd. P'ship*, 727 F.3d. at 505.

"[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (internal quotation marks omitted).

On motion to dismiss, the defendant bears the burden of showing that the plaintiff has failed to state a claim for relief. *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017).

## II. The Automatic Stay, Its Scope, and Right of Action for Violations

For purposes of the motion to dismiss, it is uncontested that the automatic stay applies to this case unless it fits within the exception for certain pre-bankruptcy judgments for possession. Likewise, for purposes of the motion, there is no dispute about the knowledge of Mr. Russell regarding the existence of the bankruptcy and intent to move forward with eviction despite the bankruptcy. Although the focus of this motion is about one narrow exception to the automatic stay, a review of the basic function of the automatic stay and policy considerations is warranted, particularly since some of the policy considerations may be pertinent to understanding the scope of the exception.

Under section 362, except as provided in subsection (b), the filing of a bankruptcy petition operates as a stay of the "enforcement, against the debtor or

against property of the estate, of a judgment obtained before commencement of the [bankruptcy case]." 11 U.S.C. § 362(a)(2). The stay imposed by section 362 is an "automatic consequence" of filing bankruptcy. *City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 589 (2021). Its scope is broad in that it "stops all collection efforts, all harassment, and all foreclosure actions." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 910 (6th Cir. 1993) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 6297); *In re Javens*, 107 F.3d 359, 363 (6th Cir. 1997); *In re Glenn*, 760 F.2d 1428, 1436 (6th Cir. 1985).

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (quoting S. Rep. No. 95–989, p. 54 (1978); H.R. Rep. No. 95–595, p. 340 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840, 5963, 6296). "[It] serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." *Chicago*, 141 S. Ct. at 589.

The Bankruptcy Code provides that "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C § 362(k)(1). A claim for damages requires proof "that the actions taken were in violation of the stay, the violation was willful, and the violation caused actual damages." *In re Webb*, 472 B.R. 665, 2012 WL 2329051 at *16 (B.A.P. 6th Cir. 2012).

A stay violation is willful when the creditor (i) knew of the stay and (ii) violated it by an intentional act. *In re Witham*, 579 B.R. 787, 792–93 (Bankr. E.D. Ky. 2017) (citing *TranSouth Fin'l Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687–88 (B.A.P. 6th Cir. 1999). Where a creditor has received actual notice of the stay, the intentional nature of the violation is presumed. *Id.* (citations omitted). Specific intent, or lack thereof, to violate the stay is irrelevant to the "willfulness" inquiry. *Webb*, 2012 WL 2329051 at *15 (citing *In re Hill*, 222 B.R. 119, 123 (Bankr. N.D. Ohio 1998)). A "creditor's good faith belief that its intentional actions did not violate the automatic

stay is not a defense," even when the creditor has made a mistake of law.[3]  *Id.* (citations omitted).

In this case, the Complaint includes allegations that: (1) the Connors' residence was foreclosed upon; (2) Mr. Russell's client had a judgment for possession of the Connors' residence prior to Mr. Connor filing bankruptcy; (3) Mr. Connor's possessory interest in the residence and personal property in the residence were property of the estate; (4) Mr. Russell was informed of Mr. Connor's bankruptcy; and, (5) after being informed of the bankruptcy, Mr. Russell proceeded to enforce the judgment to evict the Connors.  These allegations sufficiently state a claim for willful violation of the automatic stay under sections 362(a)(2) and 362(k), absent any exception in section 362(b).

Mr. Russell argues that the exception to the automatic stay in section 362(b)(22) applies.  He bears the burden of proof.  *See Raymond,* 859 F.3d at 383.

### III.  11 U.S.C. § 362(b)(22) Exception to the Automatic Stay

11 U.S.C. § 362(b)(22) provides that, subject to section 362(l), the filing of a petition does not invoke the automatic stay with respect to:

> the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor.

11 U.S.C. § 362(b)(22).  The exception to the exception found in section 362(l) does not apply to this case,[4] so the Court simply needs to focus on the critical words in section 362(b)(22).

---

[3] Although intent is not relevant to an award of actual damages, it is relevant to an award of punitive damages.  "A party seeking punitive damages under § 362(k) must demonstrate that the creditor's conduct was 'egregious, vindictive, or intentionally malicious.'" *In re Baer*, 2012 WL 2368698, at *10 (B.A.P. 6th Cir. June 22, 2012) (quoting *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004)).

[4] Section 362(l) enables a debtor to prevent § 362(b)(22) from taking immediate effect if the debtor takes various procedural steps, which include filing certain certifications along with

Exceptions to the automatic stay should be interpreted "narrowly to give the automatic stay its intended broad application." *In re Grede Foundries, Inc.*, 651 F.3d 786, 790 (7th Cir. 2011); *see also In re Montgomery*, 525 B.R. 682, 693 (Bankr. W.D. Tenn. 2015) (Exceptions to the automatic stay are "narrowly written and strictly construed."); *In re Glabb*, 261 B.R. 170, 174 (Bankr. W.D. Pa. 2001) (Because the scope of the automatic stay is broad, the exceptions provided for in section 362(b) are limited to further the purposes of the stay.); *In re The Fairchild Corp.*, 2009 WL 4546581, *4 (Bankr. D. Del. Dec. 1, 2009) ("[T]he structure of the automatic stay provisions generally supports a narrow interpretation of all exceptions to the automatic stay."); 3 COLLIER ON BANKRUPTCY ¶ 362.05 (16th ed. 2014). "[W]here Congress has intended to provide … exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly." *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302, 123 S. Ct. 832, 839, 154 L. Ed. 2d 863 (2003).

### A. Movant's Rationale for Applying the Exception

Section 362(b)(22) generally allows lessors to complete an eviction process that began before the bankruptcy, so long as the lessor has already obtained a judgment for possession when the tenant files bankruptcy. The obvious question is how that could apply to an eviction resulting from a foreclosure rather than an eviction by a lessor under a traditional lease arrangement. Mr. Russell relies on one sentence in the Deed of Trust that he contends creates a lease and, therefore, can serve as the foundation to invoke the exception.

The Deed of Trust provides:

> **Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a

---

the petition and serving those certifications on the lessor. 11 U.S.C. § 362(l). It is undisputed that the Debtor did not comply with 362(l). He did file a certification, but subsequently withdrew it. The Court takes judicial notice of the pleadings on the docket in Plaintiff's bankruptcy case, case number 21-00276.

> reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

(Compl. Ex. 1, "Deed of Trust," p. 6). All the issues relating to the motion to dismiss revolve around that one sentence and the questions that stem from the application of section 362(b)(22) to that single provision in the Deed of Trust. Does that one sentence in the Deed of Trust constitute a "lease or rental agreement" for purposes of section 362(b)(22)? Was 1 Public Homes the "Lender or the purchaser" entitled to the benefit of the Tenancy at Sufferance provision of the Deed of Trust and to be treated as a "lessor" under section 362(b)(22)? Does the judgment for possession that existed at the time of the eviction qualify as a judgment that should be recognized for purposes of section 362(b)(22) even though it was later found to be void *ab initio*?

### B. General Scope of § 362(b)(22) and Application to Foreclosures

Section 362(b)(22) refers to evictions by "lessors," when a debtor is a "tenant under a lease or rental agreement." The eviction in this case was a by-product of a foreclosure process. Nowhere in section 362(b) did Congress create an express exception for evictions that flow from a foreclosure where the foreclosing party or buyer has obtained a pre-petition judgment for possession. In fact, Congress expressly intended that the automatic stay would stop "all foreclosure actions." *Easley*, 990 F.2d at 910.

As a policy matter, it seems that a strict interpretation of the 362(b)(22) exception would not permit its application to the facts of this case. To do otherwise would seem to consume the general rule that the automatic stay "stops all foreclosure actions" with an exception that would apply in many foreclosure and eviction situations. There are a total of 28 exceptions to the automatic stay found in section 362(b). If Congress intended to carve out an exception for foreclosing parties to proceed with evictions, it would have been easy enough to add a twenty-ninth exception rather than allowing foreclosing parties to shoehorn their situations into an exception geared to lessors. Additionally, Congress could have omitted "under a

lease or residential agreement" from the section 362(b)(22) exception and it arguably would more easily apply to this situation.

The contrary policy argument would be that foreclosure is a totally separate process from eviction and any general policy relating to a bankruptcy stopping a foreclosure is irrelevant if the foreclosure has been fully completed prior to the bankruptcy. That approach would dictate that the eviction process should be viewed in isolation from the foreclosure and judged based solely on whether it fits within the exception at section 362(b)(22) – thus getting us back to that one critical sentence in the Deed of Trust.

The crucial sentence in the Deed of Trust is the type of boilerplate language included in many standard deeds of trust, so an expansive reading of it in conjunction with section 362(b)(22) would mean that the exception is not really all that limited and could be used to justify a foreclosing party taking advantage of a narrow exception intended to apply in the more traditional landlord/tenant setting.

Mr. Russell cites to no case in which the enforcement of a detainer judgment awarded after foreclosure of a mortgage was held to be excepted from the automatic stay under section 362(b)(22). The cases found by the Court all conclude – albeit mostly just in dicta – that section 362(b)(22) does *not* apply in the foreclosure context. *See, e.g., In re Comer*, 2014 WL 917485 at n. 3 (Bankr. E.D. Tenn. March 10, 2014) (Stating in dicta that 362(b)(22) (mistyped as 362(b)(23)) did not apply to a Deed of Trust with a tenancy at sufferance clause because, among other reasons, "the debtor does not reside as a tenant under a lease or rental agreement." Additionally, there was no pre-bankruptcy judgment for possession, which clearly excluded the case from the ambit of 362(b)(22).); *In re Ashlock*, 2012 WL 171591 at *3 (Bankr. E.D. Tenn. Jan. 20, 2012) (holding without discussion that 362(b)(22) did not apply in the mortgage foreclosure context because "debtor does not reside in the property 'under a lease or rental agreement'"); *In re McCray*, 342 B.R. 668, 669 (Bankr. D.C. 2006) (stating without discussion that 362(b)(22) did not apply because the movant, the purchaser at foreclosure, had not alleged that it was the debtor's lessor or that it had

a lease or rental agreement with debtor); *In re Figuera*, 2014 WL 493078 at *3 (Bankr. E.D. Cal. July 28, 2014) (finding without discussion that purchaser at foreclosure was not a lessor); *In re Ibrahim*, 2016 WL 10954444, at *12 (Bankr. D. Mass. Feb. 27, 2016), *aff'd sub nom. Ibrahim*, 2019 WL 4127600 (B.A.P. 1st Cir. Aug. 28, 2019) ("The exception to the automatic stay for evictions under 11 U.S.C. § 362(b)(22) does not apply to evictions of occupants who are holding over after foreclosure and who do not have a lease or rental agreement.").

### C. Tennessee Law Involving Tenancy Created by Deed of Trust

Despite the Court's concern about the application of section 362(b)(22) to a post-foreclosure eviction being inconsistent with the purpose of the exception and potentially contrary to Congressional intent, the determination of whether there is a "lease or rental agreement" that could fit under the exception must primarily depend on state law.

The Deed of Trust language simply provides that someone granting a lien under the Deed of Trust and who remains in possession after the property is sold at foreclosure will become "a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender."

This contractual provision conveys no greater rights to either party than are available under common law. "At common law a mortgagor holding possession 'after condition broken' is a 'tenant at sufferance' of the mortgagee." *Metro. Life Ins. Co. v. Moore*, 72 S.W.2d 1050, 1051 (Tenn. 1934) (citing Underhill on Landlord and Tenant § 167; *Fuller v. Wadsworth*, 24 N.C. (2 Ired.) 263, 38 Am. Dec. 692; *Ford v. Steele*, 54 Vt. 562). Including a provision that merely reiterates the common law is not necessarily sufficient to convert the Deed of Trust into a "lease or rental agreement."

Mr. Russell cites to only one Tennessee state law case touching on the subject, *Beasley v. Gregory*, which states that the parties to a mortgage may contract in advance "that in the event a foreclosure becomes necessary the relation of landlord

and tenant shall thereby be created between the purchaser and the mortgagor." *Beasley v. Gregory*, 2 Tenn. App. 378, 381 (1926) (citing *Griffith v. Brackman*, 97 Tenn. 387, 390).

The *Beasley* decision provides no real guidance since the facts are so unlike the situation before this Court. That opinion merely recognizes that a contractual landlord/tenant relationship arising subsequent to a foreclosure can be enforceable even when there was not a typical lease arrangement in place. It does not necessarily support the theory that generic language granting no rights or responsibilities that do not already exist at common law can justify reliance on that wording in a deed of trust for invoking section 362(b)(22).

A determination of how the exception applies to this situation requires a review of how it interacts with two components of state law: (1) the landlord/tenant relationship under the Tennessee unlawful detainer statute and (2) what constitutes a "lease" under state law. Although perhaps counter-intuitive, a careful examination reveals that there can be a landlord/tenant relationship for purposes of exercising eviction rights under the detainer statute without the parties having a "lease or rental agreement" under relevant principles of state law and for purposes of section 362(b)(22).

Starting with the detainer statute, Tenn. Code Ann. § 29-18-104 defines "unlawful detainer" as a situation where "the defendant enters by contract, either as tenant or as assignee of a tenant, or as personal representative of a tenant, or as subtenant, or by collusion with a tenant, and, in either case, willfully and without force, holds over the possession from the landlord, or the assignee of the remainder or reversion." Unlike the exception to the automatic stay, the process of pursuing a detainer judgment does not necessarily involve a "lease or rental agreement" but rather relies upon a contractual acknowledgement of tenancy and a willful holding over of possession beyond the right to do so.

To determine how the "unlawful detainer" process fits into foreclosure situations, it is helpful to review how Tennessee law has developed in that regard.

We start with the proposition set forth in *Ballow v. Motheral*, 64 Tenn. 600 (1875), that the purpose is to provide a basis for relief for landlords against tenants, that there must be an "express contract" creating the landlord-tenant relationship, and, most importantly it "does not apply to other contracts, as mortgagor and mortgagee, vendor and vendee, where in certain phases the relationship becomes assimilated to that of landlord and tenant." *Id.* at 602.

This general proposition that detainer actions do not apply to a deed of trust grantor that has "assimilated" to being a tenant after foreclosure was clarified a few years later in *Griffith v. Brackman*, 37 S.W. 273 (Tenn. 1896). There the Tennessee Supreme Court concluded that a provision in a deed of trust can potentially be sufficient to convert the relationship between a lender or purchaser and a mortgagor into a landlord/tenant relationship upon foreclosure for purposes of using Tennessee's unlawful detainer eviction process. *Id.* at 274. A critical part of the contractual language in the deed of trust in *Griffith* was that the grantor under the deed of trust would become a "tenant at will" of the purchaser at foreclosure and would be "removable by process as upon a forcible and unlawful detainer suit." *Id.* at 273. In other words, the grantor under the deed of trust contractually agreed to be a tenant and be governed by the detainer statute, but there was no mention in that case of the creation of a "lease."

More recent Tennessee cases have continued to recognize that "a landlord/tenant relationship, established by contract, is the baseline requirement for maintaining an unlawful detainer action." *CitiFinancial Mortg. Co., Inc. v. Beasley*, 2007 WL 77289, at *7 (Tenn. Ct. App. Jan. 11, 2007). That type of landlord/tenant relationship for purposes of an unlawful detainer action can be established by language in a deed of trust. *Id.* However, there is no indication from these cases that the contract involved must fit the definition of a "lease or rental agreement."

The limited Tennessee caselaw on point does appear to support Mr. Russell's argument in one respect. It does recognize that a purchaser at foreclosure can utilize the unlawful detainer legal process normally reserved for landlords – as opposed to

relying upon a trespass claim or some other relief – so long as there is a contractual provision in the deed of trust that properly recognizes it. However, it is a significant leap to argue, as Mr. Russell does, that this means there is automatically a "lease or rental agreement" for purposes of section 362(b)(22).

Mr. Russell's argument assumes that it is impossible to have a "tenancy" for purposes of detainer law without there being an underlying "lease" even if that "lease" is one sentence in the deed of trust. The argument also implicitly depends on the idea that there can be a "lease or rental agreement" that does not guarantee any right on the part of the tenant to stay in possession for any length of time.

The fundamental flaw in Mr. Russell's argument is that it does not recognize the distinction between a "tenancy at sufferance" and a "lease or rental agreement." A "tenancy at sufferance" is based on the premise that someone retains possession after the right to possession has expired or terminated and implicitly may retain possession so long as the lessor suffers it. By contrast, a "lease or rental agreement" assures that the tenant has a right to possession for at least some period of time.

A "lease represents a conveyance of an estate in real property …." *Cain Partnership Ltd. v. Pioneer Inv. Services Co.*, 914 S.W.2d 452, 455 (Tenn. 1996) (citation omitted). "A lease has been defined as a contract for exclusive possession of land for a determinate period, a conveyance grant or devise of realty for a designated period with reversion to the grantor, a conveyance or grant of an estate in real property for a limited term; the grant of use and possession in consideration of something to be rendered." *Williams v. Starace*, No. 85-162-II, 1985 WL 4074, at *1 (Tenn. Ct. App. Oct. 29, 1985) (quoting Black's Law Dictionary, Fourth Edition, p. 1035.). The Restatement of Property likewise looks to the point in time when a "landlord transfers the right to possession of the leased property." Restatement 2d of Property: Landlord & Tenant, Sec. 1.2. That relationship "will not commence until the tenant has a present right to possession." *Id.* The exact term of the lease does not have to be provided, as in the case of a tenancy at will. However, a lease requires there be some amount of time that the tenant has a right to possess the property.

The "Tenancy at Sufferance" provision in the Deed of Trust lacks this fundamental requirement for the creation of a lease, the granting to a tenant of a right of possession. As noted earlier, the "tenancy at sufferance" language in Mr. Connor's Deed of Trust created no new rights for either party. In fact, elsewhere in the Deed of Trust, it was agreed that the lender would hold legal title and the debtor, as "grantor," would have possession and use of the property only *until an event of default*. (Deed of Trust, p. 2.) Upon default, the "trustee, at the Lender's request, shall have the right to enter and take possession of the Real Property" and sell it at public auction." (*Id.*, at p. 6). The Deed of Trust recognizes that the debtor has no legal right to possession after default and sale. The acknowledgement by the debtor that he may be considered for legal purposes a "tenant at sufferance" after foreclosure does not include a new grant by the Lender/purchaser of any right of possession. It was simply recognized that if he retained possession after his right to it terminated, it would be as a mere tenant and at the Lender/purchaser's sufferance. It was totally "at Lender's option" whether the debtor could stay and pay a reasonable rent, thus arguably creating a lease based on a subsequent agreement, or must immediately surrender possession and vacate. The Lender/purchaser's demand to vacate could be made at the immediate time of the foreclosure sale transfer. At no point in time could the debtor utilize the "Tenancy at Sufferance" provision in the Deed of Trust by itself to assert any right to possession to the detriment of the Lender/purchaser.

The bottom line is that Tennessee law has evolved over time to the point of recognizing that a landlord/tenant relationship can derive from language in a deed of trust sufficient to invoke the unlawful detainer process – but that does not mean that a "lease or rental agreement" is created as a result. Here the one sentence in the Deed of Trust relied upon by Mr. Russell created no right of possession on the part of Mr. Conner, and the possibility that the lender would opt to allow possession is not enough to create a "lease or rental agreement." Because the debtor did not reside at the property "under a lease or rental agreement," the exception to the automatic stay in section 362(b)(22) does not apply.

### D. Whether 1 Public Homes LLC Is a "Lessor"

Even if the Court reached a contrary conclusion about the definition of a "lease or rental agreement," there is another serious problem with applying section 362(b)922). At least for purposes of the motion to dismiss, and based on the stipulation at the hearing, 1 Public Homes was not the title owner of the property at the time the eviction process started.

The key sentence in the deed of trust grants whatever "lessor" rights that might otherwise exist to the "Lender or the purchaser of the Property." The lender was MEB Loan Trust IV, and the purchaser at foreclosure was Property Fund 629. The "lessor" rights granted to the "purchaser" could conceivably apply to a subsequent purchaser – although that might create a new set of interpretation issues. However, in this case, 1 Public Homes was apparently not even a subsequent purchaser at the point it undertook the role of plaintiff in the eviction action.

It is possible that this aspect of the case will prove to be more complicated when all the facts are fleshed out. Nevertheless, for purposes of the motion to dismiss, this is fatal to Mr. Russell's argument. Without being able to connect the dots between the rights of a lender or purchaser under the Deed of Trust and the rights of a lessor under section 362(b)(22), Mr. Russell cannot carry his burden on the motion to dismiss. The motion to dismiss must be denied for that reason alone.

### E. Other Problems with Application of Section 362(b)(22)

In addition to fundamental obstacles to dismissal at this stage arising out of the meaning of "lease or rental agreement" and treatment of 1 Public Homes as a "lessor," there are other potential problems with the applicability of section 362(b)(22).

#### i. Nature of Judgment Obtained

Another factor that counsels against section 362(b)(22) being invoked in this case is the fact that the judgment for possession did not necessarily relate to the assertion of a lease.

The General Sessions Court initially entered a judgment dismissing the case for lack of prosecution, but after motion by 1 Public Homes, the court granted a default judgment for possession based on the defendant not appearing at the December 7, 2020, hearing. The default judgment could not be based on any facts other than those presented in the Detainer Summons and the defendant's failure to appear.

In its Detainer Summons, 1 Public Homes did not purport to be a lessor or claim that Mr. Conner resided at the property pursuant to a lease or rental agreement. When given the option to check a box for "Defendant's initial possession" being based on a written or oral lease, 1 Public Homes declined to check either box, but instead filled in the word "mortgage." In response to the question of why the Defendant's right to possession had terminated, 1 Public Homes filled in the word "foreclosure" (although there is also pre-preprinted language in the form referring to "non-payment of rent"). 1 Public Homes did not clearly represent to the state court that it requested an eviction based on a lease or rental agreement. Although that issue is unlikely ultimately to be dispositive of the case, it certainly creates one more impediment to the clear application of section 362(b)(22) for purposes of the motion to dismiss.

### ii. Effect of the Judgment Being "Void *Ab Initio*"?

Section 362(b)(22) requires that there be a judgment for possession for the exception to apply. In this case, Mr. Connor includes allegations in the Complaint and attaches relevant documents to show that the state court held on March 5, 2021, that the January 4, 2021, judgment for possession was "void *ab initio*." Mr. Russell argues that the timing is important and that the judgment had not yet been voided when Mr. Russell took the actions that allegedly violated the automatic stay.

This was not a situation where the court subsequently vacated or set aside an order. It is not necessary for ruling on the motion to dismiss to delve deeply into the differences that apply to vacating an order, voiding an order, and having an order determined to be void *ab initio*. This could have particular significance in this case

since the state court took action to void the order retroactive to its inception due to the Court finding it was based "on the highly questionable and unproven representations of counsel" for 1 Public Homes. Although the referenced counsel was not Mr. Russell, the voiding of the order *ab initio* could have implications for reliance on that order for purposes of section 362(b)(22). Since that issue has not been fully briefed, and in view of the other conclusions in this ruling, it is not necessary to determine the impact at this time – but it is clearly an issue that could ultimately have some bearing on the resolution of this litigation.

### iii. Impact of Dispute Over Underlying Foreclosure

Finally, the Court must consider the fact that the underlying foreclosure is being contested in this litigation. There are limited circumstances under Tennessee law where debtor has the right to contest a foreclosure, but one such situation appears to be when the lender does not comply with the terms of the deed of trust as has been alleged in this lawsuit. In that case, "the requisite landlord/tenant relationship may not arise when the trustee has exercised the power of sale in violation of the deed of trust." *Fed. Nat. Mortg. Ass'n v. Robilio*, 2008 WL 2502114, at *5 (Tenn. Ct. App. June 24, 2008). The fact that Mr. Connor disputes that the lender complied with the Deed of Trust serves as one more impediment to granting the motion to dismiss.

## IV. Conclusion

Under the liberal pleading standard and narrow interpretation of the exception to the automatic stay, Mr. Russell has failed to meet his burden for dismissal of the violation of the automatic stay count against him. Mr. Russell's motion to dismiss is denied.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.