
Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 1/4/2022



# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| David Silas Connor, | ) | Case No. 3:21-bk-00276 |
| | ) | Chapter 13 |
| Debtor. | ) | Judge Randal S. Mashburn |

| | | |
|---|---|---|
| David Connor, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:21-ap-90037** |
| | ) | |
| Property Fund 629, LLC, 1 Public Homes, LLC, Edward Dale Russell, and Trent Notestine, | ) | **(Lead Adversary Proceeding)** |
| Defendants. | ) | |

| | | |
|---|---|---|
| David S. Connor and Courtney T. Connor, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:21-ap-90051 |
| | ) | |
| MEB Loan Trust IV (aka Specialized Loan Servicing, LLC), Edward Dale Russell, 1 Public Homes, LLC, Property Fund 629, LLC, Mackie Wolf Zientz & Mann, P.C., and Eric Sox, | ) | (Removed from Williamson County Circuit Court, Case No. 2021-100) |
| | ) | (Consolidated with 3:21-ap-90037) |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**REGARDING EDWARD RUSSELL'S SECOND MOTION**
**TO DISMISS (RELATING TO ADV. PROC. 21-90051)**

The Court is faced with the issue of whether a Chapter 13 debtor, rather than only a Chapter 13 Trustee, has standing to pursue certain types of litigation. Under the specific circumstances of this case, the debtor does have standing to pursue his claims. Nevertheless, several of the claims must be dismissed on other grounds.[1]

David S. Connor, a debtor in a Chapter 13 proceeding, has sued eight different defendants over the foreclosure sale of his residence and the subsequent eviction of his family. The litigation includes claims against two individual attorneys and a separate law firm involved in various aspects of the foreclosure and eviction. One of the two attorneys sued is Edward Russell. Mr. Russell was involved in the last stage of the eviction process.

In one adversary proceeding, Mr. Connor sued Mr. Russell for violation of the automatic stay under federal bankruptcy law. The Court denied Mr. Russell's motion to dismiss that claim. In the adversary proceeding that gives rise to this current motion to dismiss, Adv. Pro. No. 21-90051, Mr. Connor and his non-debtor wife sued Mr. Russell along with multiple other defendants for numerous state law claims: abuse of process, wrongful foreclosure, wrongful eviction, intentional infliction of emotional distress, trespass, civil conspiracy, negligence, and declaratory judgment regarding title to the Connors' residence. These claims were asserted against all defendants generally.

---

[1] This is the third time that the Court has narrowed the scope of these consolidated adversary proceedings based on motions to dismiss. Mr. Connor alone filed a Complaint against Mr. Russell and several other defendants in Adv. Proc. No. 21-90037. The only claim asserted against Mr. Russell in that Complaint was for violation of the automatic stay under 11 U.S.C. § 362. Mr. Russell's motion to dismiss that claim was denied at Doc. 50. Mr. Connor and his wife together filed a Complaint against some of the same plus additional defendants in state court (the "State Court Complaint"), and that case was removed to Bankruptcy Court as Adv. Proc. No. 21-90051 and subsequently consolidated with Adv. Pro. No. 21-90037. Some of the claims asserted against the defendants involved in the foreclosure process were previously dismissed at Doc. 48. For general background purposes, the allegations in the two complaints are sometimes referred to collectively. The Court has also considered the Connors' proposed amended complaints prior to ruling on Mr. Russell's second motion to dismiss.

# BACKGROUND

For approximately 20 years, the Connors owned and resided at property in Williamson County, Tennessee. The property was subject to two deeds of trust. On November 5, 2020, the holder of the second deed of trust, MEB Loan Trust IV, foreclosed on the property. Property Fund 629, LLC was the purchaser at foreclosure.

On November 23, 2020, prior to Mr. Russell getting involved, 1 Public Homes LLC commenced a detainer proceeding in Williamson County General Sessions Court to obtain possession of the property. The Connors contest whether 1 Public Homes had any right to file the detainer action. They allege that 1 Public Homes was not the purchaser at foreclosure and the deed transferring the property from the initial buyer at foreclosure was not recorded at the time 1 Public Homes obtained the detainer summons.[2]

When the eviction matter first came before the General Sessions Court for hearing on December 7, 2020, the case was dismissed for failure to prosecute. 1 Public Homes got an attorney involved – not Mr. Russell – and was able to have the dismissal set aside. As a part of the same order setting aside the dismissal, 1 Public Homes obtained a default judgment on January 4, 2021, for possession of the property.

The eviction was scheduled for February 3, 2021, prompting Mr. Connor to file bankruptcy on January 28, 2021. According to the Complaint, having been told that Mr. Russell now represented 1 Public Homes, Mr. Connor's bankruptcy counsel contacted Mr. Russell and informed him about the bankruptcy filing and that the Connors were attempting to negotiate a repurchase of their property. After receiving that information, Mr. Russell allegedly instructed the Williamson County Sheriff's Office to move forward with the eviction. This alleged instruction by Mr. Russell is key to the trespass cause of action.

---

[2] In a prior hearing, counsel for Property Fund 629 and 1 Public Homes stipulated that 1 Public Homes did not have title ownership to the property when it filed the detainer proceeding.

As a further complication, the default judgment for a writ of possession was subsequently found by the General Sessions Court to be "void *ab initio*." That ruling was based upon issues tied to the filing of the motion to set aside the dismissal, the fact that the Connors had not been served with notice of the hearing, and because the General Sessions Court concluded that it had "relied on the highly questionable and unproven representations of counsel" for 1 Public Homes. This voiding of the order did not occur until March 3, 2021, roughly a month after the bankruptcy and eviction.

In the current motion to dismiss, Mr. Russell initially contests Mr. Connor's standing to pursue his claims after filing bankruptcy, asserting that only a Chapter 13 Trustee has standing. Since the Connors also make general assertions about Mr. Russell's liability for state law claims tied to both the foreclosure and eviction processes, Mr. Russell also seeks dismissal of these claims based on failure to state a claim against him under Rule 12(b)(6). The Court has determined that Mr. Connor does have standing to pursue his claims against Mr. Russell. However, because the Connors fail to allege facts sufficient to state most of their state law claims, all claims except the trespass claim will be dismissed as against Mr. Russell. The trespass claim is sufficiently stated to merit discovery and factual development.

## DISCUSSION

### I.  Standard of Review

"A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is designed to test the sufficiency of the complaint." *Ohio v. United States*, 849 F.3d 313, 318 (6th Cir. 2017) (quoting *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (additional citations omitted).³ To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not enough to allege facts that show a "mere possibility of misconduct" or "that are merely

---

³ Fed. R. Bankr. P. 7012 incorporates by reference Fed. R. Civ. P. 12(b) and makes it applicable in adversary proceedings.

consistent with a defendant's liability." *Ashcroft*, 556 U.S. at 678–79 (internal quotation marks omitted). The plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). This pleading standard is construed liberally. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020). "[I]f a plaintiff's claim is plausible, the availability of other explanations—even more likely explanations—does not bar the door to discovery." *16630 Southfield Ltd. P'ship*, 727 F.3d. at 505.

On motion to dismiss, the defendant bears the burden of showing that the plaintiff has failed to state a claim for relief. *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017).

The practice in this Court is to enter a pretrial order that identifies the issues to be tried based on the allegations and responses in the pleadings. That occurred in this case, and that order effectively supersedes the pleadings. However, the pleadings still form the basis for the claims being asserted. Indeed, the Connors sought to amend the pleadings after the latest motion to dismiss was filed.[4] Since this litigation is now governed by the pretrial order, a technical amendment to the pleadings is not necessary. However, the Court has considered the allegations in the original complaint and the proposed amendments in determining whether allegations have been sufficiently asserted to support the various causes of action.

## II.     Standing to Pursue the Claims Against Mr. Russell

Mr. Russell has challenged only Mr. Connor's standing to pursue his claims after filing the Chapter 13 bankruptcy case. He has not challenged Mrs. Connor's

---

[4] The pretrial order technically prohibits further amendments to the pleadings. It likewise allows further motions to dismiss only with leave of Court. Given the breadth of the claims asserted in the consolidated litigation, the Court has determined that a strict application of the pretrial order is not warranted and that it is preferable to allow reasonable efforts to narrow the scope of the litigation. Therefore, the Court proceeded with a hearing on the second motion filed by Mr. Russell to dismiss the litigation despite the language in the pretrial order. However, in fairness to the Connors, the Court has likewise taken into account all proposed amendments by the Connors that would clarify the basis for any of their claims.

independent standing to pursue her claims against him. Therefore, regardless of whether Mr. Connor's claims can withstand the objection to standing, Mr. Russell has not shown that the entire Complaint against him should be dismissed on the basis of standing.

As for Mr. Connor's standing, Mr. Russell contends that the claims belong to the bankruptcy estate and only the Chapter 13 Trustee has standing to pursue them. The Court finds that position unsupported both legally and factually in this case.

There is no clear, controlling Sixth Circuit precedent as to whether only the Chapter 13 Trustee has standing to bring avoidance and other causes of action on behalf of the estate or whether the trustee and the debtor have concurrent standing. The Sixth Circuit law on the subject is somewhat muddled, but a fair reading of the few cases addressing it in this Circuit, combined with what is clearly the weight of authority across the country, indicates that Mr. Russell's position is unjustified.

Mr. Russell cites *Rugiero v. Nationstar Mortgage, LLC*, 580 F. Appx. 376 (6th Cir. 2014) in support of his argument that only the Chapter 13 Trustee has standing to bring pre-petition causes of action. There is broad language in that unpublished case that could be interpreted as saying that a Chapter 13 debtor could never have standing to bring a pre-petition claim on behalf of the bankruptcy estate and that only the trustee can have such standing. However, that interpretation seems unlikely to prevail if the Sixth Circuit is given the right opportunity to address the matter in a reported case.

In *Rugiero*, in affirming the district court's summary judgment dismissal based in part on the debtor's lack of standing, the Sixth Circuit quoted and relied heavily on its prior holdings in two Chapter 7 cases, *Bauer v. Commerce Union Bank, Clarksville, Tenn.*, 859 F.2d 438, 441 (6th Cir. 1988), and *Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012). The court in *Rugiero* neither discussed, nor acknowledged, the obvious distinctions between Chapters 7 and 13.

*Rugiero* is also distinguishable from the case before the Court because the debtor was not trying to bring the action for the benefit of the bankruptcy estate. Indeed, *Rugiero* involved an undisclosed cause of action that the debtor did not list in the debtor's bankruptcy schedules, nor did the debtor amend his schedules after supposedly learning of the cause of action after filing bankruptcy. Therefore, it is not reasonable to treat *Rugiero* as controlling authority in a situation as exists in this case where the result of the litigation being pursued by the Debtor directly impacts the Chapter 13 plan.

In a subsequent case, *Kolesar v. Allstate Ins. Co.,* 814 F. Appx. 988 (6th Cir. 2020), the Sixth Circuit acknowledged that the language in *Rugiero* conflicts with numerous other circuits who have addressed the matter, but the *Kolesar* case did not present the right facts for the Sixth Circuit to formally re-evaluate a debtor's standing in Chapter 13 cases because the particular debtor had waived that argument.

At least six other circuits have more directly addressed the issue, and all appear to have come down on the side of concurrent standing for a Chapter 13 debtor to pursue causes of action on behalf of the estate. *See Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 342–44 (4th Cir. 2013); *Smith v. Rockett*, 522 F.3d 1080, 1082 (10th Cir. 2008); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 n. 2 (11th Cir. 2004); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472–74 (7th Cir. 1999); *Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515–16 (2d Cir. 1998); *Mar. Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1209 n. 2 (3d Cir. 1991), reh'g granted and opinion vacated (Jan. 10, 1992), opinion reinstated on reh'g (Mar. 24, 1992).

Based on the Sixth Circuit's lack of analysis in *Rugiero* relating to the distinction between Chapter 7 and Chapter 13, and the weight of authority from other circuits, it seems likely that the Sixth Circuit would find that Chapter 13 debtors, as compared to Chapter 7 debtors, do have independent standing to pursue pre-petition causes of action on behalf of their estates.

Fortunately, the Court does not need to rely on its assumptions about future Sixth Circuit opinions, and it is not required to resolve the ultimate issue of whether,

as a general matter, a Chapter 13 debtor always has concurrent standing with the Chapter 13 Trustee to pursue avoidance and other causes of action. It is unnecessary to rule on that broad issue since, in this specific case, the Confirmation Order provides for the Debtor's standing to pursue the claims at issue in this bankruptcy.

As a threshold matter, it must be noted that the Bankruptcy Code provides that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). The Order Confirming Chapter 13 Plan does not include any provision divesting the debtor of possession of property of the estate. ("Confirmation Order", Case No. 21-00276, Doc. 76, entered June 28, 2021.)

Further, the Confirmation Order provides that "[t]he trustee and the debtor retain the right to … pursue any causes of action **for the benefit of the debtor or the estate** – including avoidance and recovery actions and actions that would upset the liens of creditors treated as secured under the confirmed plan." Conf. Order, p. 1, ¶ 8 (emphasis added). This provision clearly reflects the acknowledgement of the Chapter 13 Trustee, with approval of the Court, that the right to pursue any litigation of this type is being shared with the Debtor. Conceptually, the Chapter 13 Trustee could abandon any interest in such litigation pursuant to 11 U.S.C. § 554 and leave the right to pursue it vested in the Debtor, so there is no rationale to conclude that the trustee cannot agree to allow concurrent standing. Thus, pursuant to the Confirmation Order, the Debtor has express standing to pursue the claims in this litigation.

In addition, the Confirmation Order also specifically refers to the Debtor's continued pursuit of these adversary proceedings, referring to them by case number. It includes alternative plan provisions based on the outcome of the Debtor's "ongoing litigation" and reserves the right of the Trustee "to seek dismissal or conversion if the litigation is unreasonably delayed." In short, there is a generic provision in one part of the Confirmation Order that gives Mr. Connor standing to pursue this general type

of litigation, and then there is a specific provision that refers to Mr. Connor pursuing this particular litigation and states how the outcome can affect the plan.

Notably, at the time that the Confirmation Order was entered on June 28, 2021, Mr. Russell was well aware that Mr. Connor asserted claims against him, since both complaints had already been filed. The complaint in 21-90037 was filed on March 12, 2021, and the complaint in 21-90051 had been removed to this Court on April 2, 2021. Moreover, Mr. Russell had already filed a motion to dismiss the complaint in 21-90037. However, Mr. Russell did not object to the provisions in the plan affecting standing and took no action to oppose entry of the Confirmation Order. Thus, there is no convincing argument that the Confirmation Order is not binding on him.

Finally, even if the Confirmation Order required clarification on the standing issue, Sixth Circuit precedent is quite clear that it is not necessary that an order conveying derivative standing be entered prior to the complaint being filed. *Isaacs v. DBI-ASG Coinvestor Fund, III, LLC (In re Isaacs)*, 895 F.3d 904, 916 (6th Cir. 2018). The Sixth Circuit recognizes that "'the ability to confer derivative standing ... is a straightforward application of bankruptcy courts' equitable powers,' among which is the power 'to craft flexible remedies in situations where the [Bankruptcy] Code's causes of action fail to achieve their intended purpose.'" *Id.* (quoting *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 242 (6th Cir. 2009) (additional citations omitted); *see also In re Dickson*, 427 B.R. 399, 406 (B.A.P. 6th Cir. 2010), aff'd, 655 F.3d 585 (6th Cir. 2011) (noting many reasons to permit Chapter 13 debtors to pursue avoidance actions).

Even if the Sixth Circuit were to take a more restrictive view of a Chapter 13 debtor's inherent general standing than other circuits addressing the issue, the Sixth Circuit in the *Isaacs* decision makes it clear that standing can be approved by the court, even after the fact, to allow a debtor to pursue a claim for the benefit of the estate. If this Court believed that retrospective granting of standing was necessary,

it would grant such standing since unquestionably that was the intent of the Chapter 13 Plan.

## III. Whether the Allegations Are Sufficient to State Claims

### A. Introduction Regarding Foreclosure-Related Claims

In their State Court Complaint, the Connors make generic allegations against all the "Defendants" with no distinction regarding who is alleged to have done what. The Connors have sought to amend their State Court Complaint to provide more specificity, but their proposed amendment adds little new information and continues, with limited exceptions, to identify the "Defendants" generally as being liable for all of the following causes of action: abuse of process, wrongful foreclosure, wrongful eviction, intentional infliction of emotional distress, trespass, civil conspiracy, negligence, and declaratory judgment regarding title to the Connors' residence.

The Connors even assert the foreclosure-related causes of action against Mr. Russell, although they do not allege that Mr. Russell was involved in any way until months after the foreclosure sale. However, the Connors acknowledged in their response to the motion to dismiss that they were not pursuing the foreclosure-related claims against Mr. Russell. Based on that stipulation, no additional analysis by the Court is required and the causes of action for breach of contract, wrongful foreclosure, negligence, and declaratory judgment will be dismissed against Mr. Russell.

As for the eviction-related claims (abuse of process, wrongful eviction, and trespass) as well as the more general claims for intentional or negligent infliction of emotional distress and civil conspiracy, the Connors contend that they have sufficiently stated causes of action against Mr. Russell. The Connors assert that Mr. Russell "participated in the wrongful eviction of the Plaintiffs from their home by an entity which had no legal right to possess the property by virtue of legal process obtained fraudulently." (Response to Motion to Dismiss, Adv. Pro. No. 21-90051, Doc. 39, p. 3). The sufficiency of the claims cannot be based on the general proposition that alleged wrongs were committed and Mr. Russell was somehow involved. Each cause of action must be considered separately and stand or fall on its own.

## B. Abuse of Process

In Tennessee, there are two distinct tort actions for the alleged misuse of legal process by another: malicious prosecution and abuse of process. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999). Whereas malicious prosecution involves the improper *issuance* of process; abuse of process involves the improper *use* of process *after* it has been issued. *Id.*

To establish a claim for abuse of process, Tennessee law requires satisfaction of two elements: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Id.* (quoting *Priest v. Union Agency*, 125 S.W.2d 142, 143 (1939)). With regard to the second element, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Id.* (internal quotations omitted).

The Connors allege that the underlying detainer warrant was deficient in various ways, including that it was obtained by a party without the right to it, and that misrepresentations were made to the issuing court. They do not allege that Mr. Russell used the detainer warrant after it had been obtained in any way other than its typical and proper purpose – an eviction. The Connors thus fail to allege facts supporting the second element of the tort, that Mr. Russell used the process for an improper purpose.

Without an improper use of process, the first element of motive is immaterial. *Priest*, 125 S.W.2d at 143 (citing 1 Am.Jur., Abuse of Process, § 6, p. 178, 179). However, even if the Court found it necessary to get to the issue of motive, there are no facts alleged from which it could reasonably be inferred that Mr. Russell had an ulterior motive. The State Court Complaint is simply silent on that point as it relates to Mr. Russell. Indeed, the Connors allege that Mr. Russell was retained less than a week before the eviction took place. Nothing is alleged to support the notion that Mr.

Russell had any motive other than the routine representation of a client in enforcing a detainer warrant.

The abuse of process claim is dismissed.

**C. Wrongful Eviction**

Mr. Russell seeks dismissal of the wrongful eviction claim because he argues that the allegations against him fail to fit within the parameters of Tenn. Code Ann. § 66-28-504, in part because he was not the Connors' landlord. The Connors respond that "they do not cite nor rely upon only [the Tennessee Code]." (Response, p. 5). They refer to their allegations in the complaints about the unlawfulness of the eviction. They also argue that Russell need not be a landlord to be liable for wrongful eviction. However, they cite no authority in support of this argument.

In addition to Tenn. Code Ann. § 66-28-504, Tennessee has long recognized a common law tort of wrongful eviction. *See e.g., Philp v. Southeast Enterprises, LLC*, 2018 WL 801663 (Tenn. Ct. App. Feb. 9, 2018); *Harris v. Dobson-Tankard Co.*, 298 S.W.2d 28, 32 (Tenn. Ct. App. 1956); *Walgreen Co. v. Walton*, 64 S.W.2d 44 (Tenn. Ct. App. 1932).

The availability of a tort claim in addition to the statutory claim does not solve the Connors' problem. To state a common law claim for wrongful eviction, the alleged tortfeasor must still be a landlord. *See Hasty v. Throneberry*, 1998 WL 828036, at *3–4 (Tenn. Ct. App. Dec. 2, 1998) (noting that although the plaintiff could not maintain a wrongful eviction claim against the defendant who was not his landlord, the plaintiff did state a claim under an alternate theory of recovery not asserted in this case); *Weinstein v. Barrasso*, 202 S.W. 920, 921 (Tenn. 1918) ("[E]viction must be by an act of the landlord or by an act of some other person for which he is answerable. Trespasses or other acts of third persons, unless committed 'under the direction of, or at the instance of, or with the consent of the lessor' do not amount to an eviction." (citations omitted)).

The Connors have provided no authority to support the cause of action against Mr. Russell, who was not their landlord, for wrongful eviction. Therefore, the wrongful eviction claim must be dismissed.

**D. Intentional or Negligent Infliction of Emotional Distress**

Mr. Russell argues that the Connors fail to state claims for intentional or negligent infliction of emotional distress because they fail to allege facts showing the requisite outrageous conduct or severe emotional distress. He further argues for the extension to post-foreclosure eviction actions of cases holding that foreclosure activity on its own is insufficiently outrageous in character to satisfy an emotional distress claim, because eviction is a natural extension of foreclosure.

In Tennessee, "[t]he elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (citations omitted). To meet the second element, a "plaintiff must show that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (citations omitted). To meet the third element, a plaintiff must also show that the "outrageous" conduct of the defendant caused emotional distress "so severe that no reasonable [person] could be expected to endure it." *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004).

In addition to simply repeating the elements of the cause of action ,the Conners use colorful, but general, language in making broad allegations against multiple parties (e.g., "the Defendants' actions are not permitted in a civilized society and they are beyond the pale of human decency;" the actions "were heartless, mean and taken in order to earn a profit at the expense of the Plaintiffs" (State Court Complaint, Adv. Pro. No. 21-90051, Doc. 1, ¶ 35)). However, such language must be supported by factual allegations to withstand a motion to dismiss. No allegations have been made

regarding Mr. Russell's involvement in the eviction process that rise to the level of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lourcey*, 146 S.W.3d at 51. The Connors fail to state a claim for intentional infliction of emotional distress against Mr. Russell.

For the related claim of negligent infliction of emotional distress, a plaintiff must satisfactorily allege "the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation." *Rogers,* 367 S.W.3d at 206. Additionally, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury. *Id.* The Connors do not allege any facts to support that Mr. Russell owed them any specific duty of care. Therefore, the negligent infliction of emotional distress claim must also be dismissed.

### E. Civil Conspiracy

The Tennessee Supreme Court has stated that "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002).

The elements of civil conspiracy are: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020), *appeal denied* (June 4, 2020) (quoting *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). In addition, a claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007).

In Tennessee, conspiracy claims must be pled with some degree of specificity. *Lapinsky v. Cook*, 536 S.W.3d 425, 444 (Tenn. Ct. App. 2016) (citing *Kincaid*, 221

S.W.3d at 38; and *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002)). First, the Connors do not name the alleged parties to the conspiracy. They Connors do not allege any facts from which a reasonable inference can be drawn that Mr. Russell and any other particular person had a common design to accomplish an unlawful purpose or a lawful purpose by unlawful means. The Connors merely allege that Mr. Russell acted on behalf of his client to enforce a detainer warrant and evict the Connors – a lawful purpose. Although they have asserted that the detainer warrant was improperly obtained by prior counsel, there is no allegation that Mr. Russell was involved in those alleged improprieties. There is simply no allegation with any degree of specificity that Mr. Russell had a common design with his client or any other person to use unlawful means to evict the Connors.

The Civil Conspiracy claim must, therefore, be dismissed.

**F. Trespass**

The final claim against Mr. Russell is for trespass. This tort does not require the same type of improper motive or intent to cause harm as many of the other tort claims that the Court is dismissing. "Trespass protects a landowner's right to exclusive possession," and "[a]ny unauthorized entry upon the property of another is a trespass." *Kauffman v. Forsythe*, 2021 WL 2102910, at *5 (Tenn. Ct. App. May 25, 2021) (citing *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988)). Trespass is an intentional tort, but the requisite intent is merely the intent to enter the property of another, "irrespective of whether the actor knows or should know that he or she is not entitled to enter." *Twenty Holdings, LLC v. Land S. TN, LLC*, 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019) (quoting 75 Am. Jur. 2d Trespass § 23).

Mr. Russell argues that the claim of trespass cannot stand because there is no allegation "that Mr. Russell, at any time entered onto property owned by Plaintiffs." The flaw in that argument is that it assumes that trespass can only occur if Mr. Russell personally set foot on the property.

While it is true that there is no allegation that Mr. Russell personally entered the property, it is alleged that Mr. Russell directed the Sheriff's Office to enter the

property to carry out the eviction and that the eviction was subsequently carried out based on those instructions. It appears that under Tennessee law, Mr. Russell could potentially be liable for trespass if he is found to have caused the Sheriff's Office to enter the Connors' property and that entry was unauthorized. Tennessee law includes the possibility of trespass liability where the alleged trespasser "causes a thing or third person" to do the trespassing. *Shoffner v. CSX Transportation, Inc.*, 2013 WL 11521840, at *6 (E.D. Tenn. Mar. 26, 2013) (quoting Restatement (Second) of Torts § 158)). The Restatement (Second) of Torts provides:

> If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry if it be a trespass. This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question.

Restatement (Second) of Torts § 158, comment j (1965).

According to the Restatement (Second) of Torts § 158 comment e (1965), "[c]onduct which would otherwise constitute a trespass is not a trespass if it is privileged. Such a privilege may be derived from the consent of the possessor …, or may be given by law because of the purpose for which the actor acts."

In this case, for purposes of surviving the motion to dismiss, the Connors adequately allege that Mr. Russell caused the Sheriff's Office to enter their property and that deficiencies in the detainer warrant call into question Mr. Russell's authorization or privilege for the entry. However, there are potentially numerous obstacles to the successful pursuit of the trespass claim against Mr. Russell. For example, what role did Mr. Russell play in directing the eviction? Did Mr. Russell cause the Sheriff to enter the property, or was the Sheriff simply acting pursuant to the eviction order? Was the entry "unauthorized" when it was being done pursuant to court order? If not "authorized," could the entry nevertheless be "privileged" under applicable law based on the existence of the detainer warrant? Was the detainer warrant "valid or fair on its face" to create a privilege? What is the impact on any

privilege when the court order relied upon was later determined to be "void *ab initio*"? *See* Restatement (Second) of Torts §§ 123, 124, 158, 162, 208 & 210 regarding privilege and related issues in connection with court orders.

Despite the many questions that may someday need to be addressed in connection with the trespass claim, those matters have not been raised in the motion to dismiss. The Connors asserted basic facts to support a claim of trespass, and the motion to dismiss was tied solely to the lack of Mr. Russell's physical presence on the property. Since the law is clear that it is possible to have a claim of trespass based on causing a third party to enter property of another, all the other interesting issues will have to await further factual development and legal argument before they can be resolved by the Court.

Accordingly, the motion to dismiss as it relates to the trespass claim must be denied.

## IV. Conclusion

Mr. Russell's motion to dismiss is granted as to all claims in the State Court Complaint except for the trespass claim. As for the trespass claim, the motion to dismiss is denied. A separate order will be issued.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.