
Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 6/6/2022



# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| David Silas Connor, ) | Case No. 3:21-bk-00276 |
| ) | Chapter 13 |
|     Debtor. ) | Judge Randal S. Mashburn |

| | |
|---|---|
| ) | |
| David Connor, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **Adv. Proc. No. 3:21-ap-90037** |
| ) | |
| Property Fund 629, LLC, 1 Public ) | **(Lead Adversary Proceeding)** |
| Homes, LLC, Edward Dale Russell, ) | |
| and Trent Notestine, ) | |
|     Defendants. ) | |
| ) | |

| | |
|---|---|
| ) | |
| David S. Connor and ) | |
| Courtney T. Connor, ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Adv. Proc. No. 3:21-ap-90051 |
| ) | |
| MEB Loan Trust IV (aka ) | (Removed from Williamson County |
| Specialized Loan Servicing, LLC), ) | Circuit Court, Case No. 2021-100) |
| Edward Dale Russell, 1 Public ) | |
| Homes, LLC, Property Fund 629, ) | (Consolidated with 3:21-ap-90037) |
| LLC, Mackie Wolf Zientz & ) | |
| Mann, P.C., and Eric Sox, ) | |
|     Defendants. ) | |

### MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING FORECLOSURE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

David and Courtney Connor filed this lawsuit for wrongful foreclosure, wrongful eviction, and related claims against multiple defendants who are loosely categorized as the Foreclosure Defendants and the Eviction Defendants. The Foreclosure Defendants are MEB Loan Trust IV ("MEB"), Specialized Loan Servicing, LLC ("SLS"), and their counsel, Mackie Wolf Zientz & Mann, P.C.

The Court previously dismissed pursuant to Fed. R. Civ. P. 12(b)(6) several claims the Connors asserted against the Foreclosure Defendants. The Foreclosure Defendants now seek summary judgment on the remaining claims: breach of contract relating to the Connors' Deed of Trust; wrongful foreclosure; and declaratory judgment about title ownership of the foreclosed property.

Generally, the Connors allege the Foreclosure Defendants wrongfully foreclosed on the Connors' residence without adequate notice and in breach of the Deed of Trust and statutory law. For the reasons explained herein, the Foreclosure Defendants are entitled to judgment as a matter of law on facts about which there is no genuine dispute. Summary judgment will therefore be granted.

## FACTS

For all times relevant to this suit, the Connors owned and resided at certain property in Williamson County, Tennessee (the "Property"). On April 24, 2002, Plaintiffs executed a Bank of America Equity Credit Line Agreement and Disclosure Statement (the "Note") in favor of the original lender, Bank of America, N.A., for the maximum amount of $90,000.00. Concurrently with execution of the Note, Plaintiffs executed a Deed of Trust ("Deed of Trust" and together with the Note, the "Loan"), as grantors, granting Bank of America a security interest in the Property. The Deed of Trust was recorded with the Williamson County Register of Deeds.

Bank of America subsequently assigned the Loan to MEB and, in order to reflect the transfer, an Assignment of Deed of Trust (the "Assignment") was recorded with the Williamson County Register of Deeds on May 18, 2020. SLS serviced the Loan.

Plaintiffs failed to timely make the January 16, 2019, payment and all subsequent payments. On or about October 9, 2019, SLS sent a letter of even date, titled "Notice of Default and Notice of Intent to Foreclose," addressed to "David S Connor and Courtney T Connor," via United States regular mail to the Property address (the "Notice of Default"). In the Notice of Default, Plaintiffs were advised that the Loan was in default and they needed to pay the total past due amount of $10,353.14 on or before November 11, 2019. Plaintiffs were also informed in the Notice of Default that failure to timely cure the default would result in an acceleration of the debt and commencement of foreclosure.

MEB subsequently appointed MWZM as the substitute trustee for the Deed of Trust, and a Substitution of Trustee was recorded on September 21, 2020, with the Williamson County Register of Deeds.

The default was not cured, and on April 17, 2020, MWZM drafted and sent a notice of acceleration of the debt to Plaintiffs via certified mail to the Property address.[1] MWZM conducted or requested various title searches, military service checks, bankruptcy filing checks, and other related inquiries prior to the subject foreclosure sale.

On October 2, 2020, MWZM mailed via certified mail five copies of a Notice of Substitute Trustee's Sale, which advised that a foreclosure sale was scheduled to take place on November 5, 2020. Three separate copies were mailed to the Property address directed to each of (i) "Occupant"; (ii) "David S. Conner"; and (iii) "Courtney T. Conner." Additional copies were mailed to the Internal Revenue Service, a lienholder, and to Bank of America, the holder of the first mortgage and lien.

---

[1] As noted later, an issue has been raised about admission of the actual notice for purposes of the summary judgment motion, but there has been no evidence presented to contradict testimony via declaration of Mr. Bridenbaugh that a notice of acceleration was, in fact, mailed. Since notice of acceleration was not required by the Deed of Trust, there is no genuine issue in this regard that would affect the granting of summary judgment.

MWZM caused to be published notice of the foreclosure sale in the Williamson Herald, a newspaper for Williamson County, Tennessee, on October 8, 15 and 22, 2020. The mailed Notice of Substitute Trustee's Sale contains the same content of that published in the Williamson Herald.[2] The published notice identified the Deed of Trust by its original trustee, recording number, and date of execution. The notice included a legal property description, and the correct street address for the Property. In two places, the Property owners were referred to as "Courtney T. Conner and David S. Conner" in all capitals. In the legal description of the property, the owners were referred to as "David S. Conner and wife, Courtney T. Connor." So, the publication notice named the Connors alternately Connor with an o and Conner with an e.

On November 5, 2020, MWZM conducted a non-judicial foreclosure sale (hereinafter, the "Foreclosure Sale") of the Property. At the Foreclosure Sale, Property Fund 629, LLC was the highest and best bidder at $410,000.00, and MWZM subsequently conveyed the Property to Property Fund 629, LLC via a Substitute Trustee's Deed, which was recorded on November 20, 2020, with the Williamson County Register of Deeds.

On or about November 16, 2020, MWZM transmitted $80,908.84, the funds necessary to satisfy the Loan, to SLS. After other lienholders were paid, there were excess proceeds from the Foreclosure Sale. On January 19, 2021, MWZM mailed correspondence to the Connors notifying them that excess proceeds remained from the Foreclosure Sale. On February 8, 2021, MWZM's counsel delivered to the Connors' counsel a check in the amount of $178,643.97, which represented the excess proceeds. Interestingly, the named payees on the check were: "David and Courtney Conner." The use of e instead of o in the Connors' name in that instance proved to be no impediment to the Connors getting the money. The check was cashed on February 24, 2021.

---

[2] For the published version of the Notice, the Court refers to Exhibit 2 to the Complaint. (Case No. 21-90051, Doc. 1)

Although the Connors challenge some of the Foreclosure Defendants' evidence, as discussed below, the Connors do not dispute the existence of the Loan, their default, or any of the foreclosure process, except for two things. First, they claim not to have received actual notice of the foreclosure and, second, they contend that the publication notice was defective because it included a misspelling of their last name. The Connors offer no counter evidence to challenge the Foreclosure Defendants' assertions that notices were mailed at the time and in the manner described by the Defendants. They likewise have not called into question the validity of the documents relied upon by the Defendants – except for the issue over actual receipt and the spelling matter.

## DISCUSSION

The Connors primarily complain about lack of receipt of notice of foreclosure and the misspelling of Connor as Conner in the publication notice of foreclosure. They present no evidence to counter that submitted by the Foreclosure Defendants, aside from the Connors' affidavits which merely say that they received no notice of foreclosure. Instead, the Connors attack the sufficiency of the Foreclosure Defendants' evidence. As discussed below, the Foreclosure Defendants have shown with admissible evidence that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.

### I. Standard of Review

A movant is entitled to summary judgment upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence

or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Once a summary judgment movant has met his burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must cite to "specific facts showing that there is a genuine issue for trial." *Haddad v. Gregg*, 910 F.3d 237, 243 (6th Cir. 2018) (citation omitted). A dispute is "genuine" if a reasonable juror could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted).

## II.     Evidentiary Issues

The Connors object to some of the documents submitted by the Foreclosure Defendants in support of their motion for summary judgment on various grounds. Some of the objections are quite trivial, and no objection is sustainable.

The Connors object to numerous documents that the Foreclosure Defendants submitted pursuant to Fed. R. Evid. 803(6), the business records exception to hearsay. The Court finds that the following exhibits attached to the Declaration of Nicholas J. Raab are admissible pursuant to either Fed. R. Evid. 803(6) or because they are records referred to and integral to the Connors' Complaint: A-1, the Note; A-2, the Deed of Trust; A-3, the Assignment of Deed of Trust; A-4, the Connors' payment

history; A-5, the Notice of Default; A-6, the Substitution of Trustee; and A-10, the Substitute Trustee's Deed.

Regardless of any business record qualification, Exhibits A-1, A-2, A-3, A-6, and A-10 are all admissible as documents referred to and integral to the Connors' Complaint. The Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); Fed. R. Bankr. P. 7010. A plaintiff cannot avoid full consideration of a relevant document by not attaching it. "Where the plaintiff 'fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'" *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1327 (2d ed. 1990)); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir. 1997). Furthermore, the Connors do not contest the documents' authenticity or veracity. Instead, they merely challenge the sufficiency of the Foreclosure Defendants' business records authentication as an apparent attempt to throw up a technical roadblock.

The Court further finds that exhibits B-2 through B-6 attached to the Declaration of Jerry A. Bridenbaugh are admissible as documents authenticated by Mr. Bridenbaugh through his personal knowledge or as business records pursuant to Fed. R. Evid. 803(6). Exhibit B-1, the purported Notice of Acceleration, is not what it is purported to be, but instead appears to be a duplicate of Exhibit B-2. The Court has considered Mr. Bridenbaugh's testimony about having sent notice of acceleration to the Connors, and the Connors have presented no evidence to dispute the fact that the notice was sent as opposed to received. The content of the Notice of Acceleration is not in dispute, so the copy of the Notice which was intended to be Exhibit B-1 is unnecessary to summary judgment.

The Connors complain generally that the documents are hearsay and not properly authenticated, but the Connors offer no specific argument about a deficiency

in the Declarations or evidence indicating a lack of trustworthiness of the documents or the Declarations. *See* Rule 803(6)(E). As to the notices required for a proper foreclosure, the Connors add an objection that the notices were prepared in anticipation of litigation, perhaps as a challenge to the Declaration evidence of the timing and method of service of the notices. As with their other objections, the Connors offer no evidence to challenge the sworn testimony of Mr. Raab and Mr. Bridenbaugh.

The Connors' objections to some of the documents become borderline frivolous, considering that the Connors themselves reference the same documents in their Complaint[3] and rely on them to support their claims, such as the Deed of Trust which is the contract the Connors claim the Foreclosure Defendants breached. The Connors cannot prove their claim of breach of contract without introducing into evidence the contract at issue. Their Complaint alleges a copy of the Deed of Trust was attached, but instead the attachment is a copy of the Assignment of the Deed of Trust to MEB. Compliant ¶ 12, Ex. 1. Were the Court to exclude the Deed of Trust, the Connors' own breach of contract claim would fail, and dismissal of that claim would be warranted on different grounds from that asserted in the summary judgment motion. Simply put, the Conners cannot both rely on a document in support of a cause of action and attack that document when used for summary judgment purposes.

The Connors similarly object to the Foreclosure Defendants' proof of publication of the foreclosure notice in the Williamson Herald (Exhibit A-9), yet the Connors themselves alleged in their Complaint that publication was made in the Williamson County Herald on October 8, 15 and 22, 2020, and attached a copy of what they purport to be the published notice. *See* Complaint, ¶¶ 15-16, Ex. 2. The Connors' allegations and attachment match those of the Foreclosure Defendants in substance. The Conners do not complain that the copy of the publication introduced by the Foreclosure Defendants was altered in any way or was not a true and correct copy --

---

[3] Case No. 21-90051, Doc. 1.

only that it was not properly authenticated. The Connors' own claims of breach of contract and wrongful foreclosure rely on the same content of the publication to show that their name was misspelled. Their objection to any testimony about the publication or copy of it cannot be taken seriously in light of the fact that the testimony mirrors their own statements in their Complaint and the copy of the publication is part of their required proof. Thus, aside from the lack of any serious attack on the authenticity of the Foreclosure Defendants' exhibit at A-9, the Court has considered the publication exhibit that the Connors attached as Exhibit 2 to the Complaint[4] for purposes of getting to the merits of the summary judgment motion.

### III. Breach of Contract and Wrongful Foreclosure

"While there are no specific elements for wrongful foreclosure, Tennessee courts generally examine whether contractual or statutory requirements were met …." *Ringold v. Bank of Am. Home Loans*, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013) (citing *Hutchens v. Bank of Am. N.A.*, 2012 WL 1618316, at *9–10 (E.D. Tenn. May 9, 2012)); *Lee v. EquiFirst Corp.*, 2010 WL 4320714, at *10 (M.D. Tenn. Oct. 26, 2010)).

The Connors' breach of contract and wrongful foreclosure claims are closely related. For both claims, the Connors allege that legally required notices were not properly provided to them prior to the foreclosure of their Property. The primary difference in the claims is the source of the requirement. Tennessee statutes require that certain notices be sent to debtors and published prior to foreclosing on a deed of trust or mortgage and selling the real property collateral. The Connors' Deed of Trust requires compliance with Tennessee law and certain additional notices.

The Connors complain about not being provided with the required notices such that they were actually received and that some of the notices contained a misspelling of their last name, spelling it Conner with an e instead of Connor with an o. The

---

[4] The Court notes that they appear to be the same in substance.

Foreclosure Defendants refute the Connors' claims. With their motion for summary judgment, the Foreclosure Defendants have provided proof of service of the required notices, which the Connors have not countered. The Foreclosure Defendants also argue that, as a matter of law, the misspelling amounts to harmless error and is insufficient to invalidate the foreclosure. The Court agrees.

### A. Service, Timing, and Content of Required Notices

The Foreclosure Defendants have provided business-records-based declarations from Mr. Raab and Mr. Bridenbaugh as to the service of all required notices of foreclosure. The Connors have not produced any contrary evidence. Their arguments regarding the necessity of receipt of the notices and the name spelling issue are insufficient to overcome summary judgment.

#### i. Effective Service

First, as to effective delivery, actual receipt is not required by the Deed of Trust or Tennessee statute. The Deed of Trust states as follows:

> Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective…if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust.

(Raab Decl., Ex A-2 ("DoT"), p.8). The Deed of Trust clearly provides that notice is effective, if mailed, when deposited in the mail, postage prepaid, whether first class, certified or registered mail, and does not require that notices actually be received in order to be effective.

Similarly, the Tennessee statute requires that "on or before the first date of publication[,]" the trustee "shall send to the debtor and any co-debtor a copy of the notice" to be published in the newspaper "by registered or certified mail, return receipt requested." Tenn. Code Ann. § 35-5-101(e). The statute does not expressly require proof of actual receipt, and the statute has been recognized by Tennessee

courts as not requiring actual receipt. *See Davis v. Wells Fargo Home Mortg.*, 2018 WL 1560077, at *11 (Tenn. Ct. App. Mar. 29, 2018); *Citizens Nat'l Bank v. Mountain Ridge, LLC*, 2010 WL 4238479, at *6 (E.D. Tenn. Oct. 21, 2010) ("[Tenn. Code Ann. § 35–5–101(e)] contains no requirement of actual notice and, because defendants have alleged no other facts regarding why notice was not given or improper, the Court cannot conclude that there exists a genuine issue of material fact as to this issue.").

The Deed of Trust requires notices be "directed to the addresses shown near the beginning of [the] Deed of Trust." The Connors' names, "David S Connor" and "Courtney T Connor," and the Property address are provided at the top of the first page of the Deed of Trust. Likewise, the Tennessee statute requires notices be addressed to the debtor at the mailing address of the Property. Tenn. Code Ann. § 35-5-101(e)(1)(A). All of the notices provided by the Foreclosure Defendants were properly directed to the named defendants, although sometimes misspelled as Conner, with occasional duplicate copies addressed generally to "occupant" at the Property address. The Court finds the misspelling of Connor as Conner for purposes of the mailings to be harmless, as name misspellings are common and not likely to cause mail to be mis-directed when properly addressed. In this case, the notices were properly addressed.

The method of service of all notices was also proper. The Deed of Trust requires no more than regular mail, postage prepaid, although, certified mail is also acceptable. The Tennessee statute requires that a copy of the publication notice be sent to the debtor by "registered or certified mail, return receipt requested." That is the only notice for which certified mail was required, and the Foreclosure Defendants have presented proof of service of the publication notice to the Connors by certified mail. The service of all other notices by regular mail, postage prepaid, as testified by Mr. Raab and Mr. Bridenbaugh, was legally sufficient.

Thus, there is no genuine issue that has been raised by the Conners as to the alleged deficiency in the service of any of the required notices.

### ii. Timing and Content of Notices

The Court notes that the Connors do not complain of any defect in the content of notices, aside from the misspelling of their last name. Apart from the name issue in the published notice, which requires more detailed analysis, the notices all appear to be in compliance with the Deed of Trust and applicable statutes.

Prior to proceeding with accelerating the debt after default and foreclosing, the Deed of Trust requires the Lender to provide certain notices. First, the Lender must provide notice of default, which specifies: " (a) the default; (b) the action required to cure the default; (c) a date, not less than thirty (30) days from the date the notice is given to Grantor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (DoT, p. 7). The Notice of Default sent by SLS on October 9, 2019, satisfies all of these requirements. It notes the payment default and amount owed; provides the specific date of November 11, 2019 – which is more than 30 days from October 9 – to cure the default through payment; and notes that failure to cure may result in acceleration and foreclosure.

According to the Deed of Trust, the Lender may then accelerate at its option *without further notice.* (DoT, p. 6). The Deed of Trust further provides that "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument *without further demand* and may invoke the power of sale and any other remedies permitted by applicable law." (*Id.*, p. 7). Although not required, the Foreclosure Defendants sent the Debtors notice of acceleration on April 17, 2020, because the Connors had not cured the default.

The Deed of Trust permits the lender to foreclose on the Property with notice as follows:

>With respect to all or any part of the Real Property, (a) the Trustee, at the Lender's request, shall have the right to enter and take possession of the Real Property and to sell all or part of the Real Property, at public auction, to the highest bidder for cash, free from equity of redemption, and any statutory or common law right of redemption, homestead dower, marital share, and all other exemptions, **after giving notice of the time, place and terms of such sale and of the Real Property to be sold as required by law**….

(*Id.*) The Deed of Trust further requires that "Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Grantor." (*Id.*, p. 7).

Similarly, Tennessee has certain statutory requirements for providing notice of foreclosure sales to debtors. A trustee must advertise a foreclosure sale in a newspaper published in the county, Tenn. Code Ann. § 35-5-101(a), and the trustee must send the debtor a copy of the advertisement "on or before the first date of publication," § 35-5-101(e).

The first of two timing requirements for providing debtor notice of the foreclosure sale is that a copy of the publication must be sent to debtor "on or before the first date of publication." *Id.* In this case, the first publication was on October 8, 2020, and on October 2, 2020, the Foreclosure Defendants sent the contents of the publication notice with the title "Notice of Substitute Trustee's Sale" to each Connor separately, addressed to the Property address, as well as a third copy sent to "Occupant" at the same address. As October 2 preceded October 8, the first date of publication, the timing of service complied with the Tennessee statute.[5]

The second timing requirement is that the advertisement of the sale be "made at least three (3) different times," and the "first publication shall be at least twenty (20) days previous to the sale." Tenn. Code Ann. § 35-5-101(a) and (b). In this case, the Foreclosure Defendants caused to be published a Notice of Substitute Trustee's

---

[5] The Connors misread Tennessee Code Annotated § 35-5-101(e) in asserting that the notice of sale had to be mailed 30 days prior to the first publication.

Sale, scheduled for November 5, 2020, on October 8, 15, and 22, 2020. October 8 is more than 20 days before the sale date of November 5, and the publication ran the requisite three times.

Thus, the timing of the sale notices complied with the Deed of Trust and the Tennessee statute. The publication was also properly run in the Williamson Herald, which is a newspaper serving Williamson County, Tennessee. See Tenn. Code Ann. § 35-5-101(a).

The Court turns to the content of the sale notice. Tennessee Code Annotated § 35-5-104 requires that certain information be included in the sale notice. The only defect in the content the Connors complain of is that their last name was misspelled in some places as Conner. Although the Connors make no other complaint about the content, the Court has reviewed the notice of sale and finds it to generally comply with the statute.

### B. Misspelling of Plaintiffs' Name in Publication Notice

The Court found above that the misspelling of the Connors' last name as Conner for purposes of the mailed notices was harmless. There is a separate question as to whether the same misspelling in the publication notice of the sale rendered it defective.

The Tennessee statute requires that the publication notice "[g]ive the names of the plaintiff and defendant." Tenn. Code Ann. § 35-5-104(a)(1). The Connors argue that the publication notice was deficient because, as they argue, Conner is a different name than Connor.

In general, Tennessee law has required the trustee's strict compliance with the advertisement and notice terms as provided in the deed of trust. *See Henderson v. Galloway*, 27 Tenn. 692, 695-96 (1848). The consequences of a foreclosing trustee's failure to comply with foreclosure terms depend upon the source of the requirements. Specifically, if the terms are sufficiently clear and originate in the deed of trust, the

law demands strict compliance for the conveyance to be valid. *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936).

In contrast, where a foreclosing trustee proceeds according to statutory requirements, the law in Tennessee is not so exacting. *See* Tenn. Code Ann. §§ 35-5-101-35-5-116 (2001 & Supp .2006) (addressing non-judicial sales pertaining to the foreclosure of deeds of trust). The failure of a trustee to comply with statutory requirements does not render the sale at foreclosure void or even voidable. *See* Tenn. Code Ann. § 35-5-106 (sale without advertisement is not void); *Doty v. Fed. Land Bank of Louisville*, 89 S.W.2d 337 (Tenn. 1936); *Williams v. Williams*, 156 S.W.2d 363, 369 (Tenn. Ct. App. 1941). The requirements for the content of a foreclosure advertisement derive from Tennessee statute, and the Deed of Trust merely requires compliance with that statute in that regard, without any additional provisions about the advertising.

Tennessee recognizes that some errors are harmless in the foreclosure context. *See, e.g., Home Fed. Bank, FSB, of Middlesboro, Ky. v. First Nat. Bank of LaFollette, Tenn.*, 110 S.W.3d 433, 442 (Tenn. Ct. App. 2002) (holding that failure to identify the holder of the second deed of trust in the advertisement was harmless error when a copy of the advertisement was delivered to and admittedly received by the holder of the second deed of trust). While neither the parties nor the Court located a Tennessee court opinion addressing a name misspelling in the context of a foreclosure, courts from other states have found a name misspelling to be inconsequential. *See, e.g., Gallagher v. BAC Home Loans Servicing, L.P.*, No. 1:11-CV-1356, 2012 WL 1952349, at \*7 (W.D. Mich. May 30, 2012) (finding the misspelling of plaintiffs' name in a foreclosure notice to be a "slight and inconsequential mistake that under the circumstances of this case will not void the foreclosure sale"); *Kyllonen v. Acme Harvesting Mach. Co.*, 182 N.W. 249, 250 (N.D. 1921) (misspelling of mortgagor's name in published notice of foreclosure held not to render foreclosure void, where other information is correctly provided); *Pinkert v. Lamb*, 224 S.W.2d 15, 20 (Ark. 1949) (notice by publication of the foreclosure sale not invalidated by the misspelling

of the owner's name); *Murray v. Schillace*, 658 A.2d 512, 514 (R.I. 1995) (holding that the deletion of a single letter from owner's name is neither substantial nor misleading when the property description was also included). These cases are in line with Tennessee's acceptance of harmless errors.

Regardless of whether the Court applies a strict compliance or lesser standard, the Court finds that the misspelling of Connor as Conner in the publication notice to be harmless. The use of print media to provide formal legal notice of a foreclosure may now be somewhat outdated and may not provide the benefit once attributed to that mode of communication. However, that is still what is required by state law and by the contract in this case. Trying to determine the practical effect of the minor spelling mistake is difficult, but common sense must prevail in considering the impact, if any, on the Connors if they or other parties with a potential interest had actually read the publication.

If reading the notice published in the Williamson Herald, the Connors were just as likely to notice the foreclosure advertisement with their names spelled Conner as Connor. The Connors were always referred to together with their full names (e.g., "Courtney T. Conner and David S. Conner," and "David S. Conner and wife, Courtney T. Connor."). The publication notice also included the street address for the Property. When "Conner" was combined with the Connors' first names and those of their spouse, and the Property address was also provided, the Connors were not likely to pass over this advertisement as though applicable to some other persons and other property. To the extent foreclosure advertisements are placed alphabetically by the Williamson Herald, for which there is no allegation or proof one way or another, an advertisement for sale of "Conner" property is likely to be in close proximity to and where one would expect to find an advertisement for "Connor" property. When combined with their first names and the Property address, the Court also finds it likely that friends, family, or acquaintances of the Connors were just as likely to notice the advertisement with the Conner spelling as if correctly spelled Connor. If an interested buyer were reviewing the notice, it seems obvious that what would be

important would be all the details about the Property, including not only the address but information down to the plat book and page number in the Register's Office for Williamson County. It is not credible to think that the use of an e instead of an o in spelling Conner could have made a difference in the effect on anyone who saw the notice or anyone whose actions were expected to be governed by review of the publication.

The Court concludes that the publication notice included the names of the plaintiffs, as required by Tenn. Code Ann. § 35-5-104(a)(1). All required information is there, and the misspelling of plaintiffs' name as Conner instead of Connor was harmless.

### IV. Declaratory Judgment

The Connors included in their Complaint a request for declaratory judgment as to their ownership interest the property at issue. Since the Connors' Property was properly foreclosed and sold to a third party, the Connors lost their title ownership of the Property with the foreclosure sale. The Connors are not entitled to declaratory judgment.

### CONCLUSION

For all of the reasons discussed herein, the Foreclosure Defendants are entitled to summary judgment and dismissal of all remaining claims against them, which include breach of contract, wrongful foreclosure, and declaratory judgment. A separate order will be issued.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.