
Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 6/6/2022



# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| David Silas Connor, | ) | Case No. 3:21-bk-00276 |
| | ) | Chapter 13 |
| Debtor. | ) | Judge Randal S. Mashburn |

| | | |
|---|---|---|
| David Connor, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:21-ap-90037** |
| | ) | |
| Property Fund 629, LLC, 1 Public | ) | **(Lead Adversary Proceeding)** |
| Homes, LLC, Edward Dale Russell, | ) | |
| and Trent Notestine, | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| David S. Connor and | ) | |
| Courtney T. Connor, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:21-ap-90051 |
| | ) | |
| MEB Loan Trust IV (aka | ) | (Removed from Williamson County |
| Specialized Loan Servicing, LLC),[1] | ) | Circuit Court, Case No. 2021-100) |
| Edward Dale Russell, 1 Public | ) | |
| Homes, LLC, Property Fund 629, | ) | (Consolidated with 3:21-ap-90037) |
| LLC, Mackie Wolf Zientz & | ) | |
| Mann, P.C., and Eric Sox, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING
## EDWARD RUSSELL'S MOTION FOR SUMMARY JUDGMENT

---

[1] Specialized Loan Servicing, LLC ("SLS") was identified by the plaintiffs as a trade name of MEB Loan Trust IV; but according to SLS, it is a separate entity and separate defendant. Consistent with the Court's normal practice, the original case caption from the complaint is reflected in this ruling.

The Court previously addressed violation of the automatic stay and trespass claims asserted against Edward Russell in the context of Rule 12(b)(6) motions to dismiss. At the time, the Court dismissed several other claims but determined that the allegations in the complaints were sufficient as to violation of the automatic stay and trespass.[2] Now, after extensive discovery, the claims are before the court again on Mr. Russell's motion for summary judgment. As explained herein, Mr. Russell has shown that there is an absence of evidence to support either claim and he is entitled summary judgment and dismissal of the claims as a matter of law.

## BACKGROUND

David S. Connor, a debtor in a Chapter 13 bankruptcy, and, as to some claims, his wife, Courtney T. Connor, sued multiple defendants in these consolidated adversary proceedings over the foreclosure sale of their residence and the subsequent eviction of their family. Mr. Russell, a lawyer, became involved late in the game, shortly before the eviction, when Public Fund 629, LLC retained him to represent it in Mr. Connor's bankruptcy.

Despite Mr. Russell's limited involvement, some background about earlier events may be helpful. For approximately 20 years, the Connors owned and resided at property in Williamson County, Tennessee. The property was subject to two deeds of trust. On November 5, 2020, the holder of the second deed of trust foreclosed on the property. Property Fund 629, LLC was the purchaser at foreclosure.

On November 23, 2020, a related company, 1 Public Homes LLC, commenced a detainer/eviction proceeding in Williamson County General Sessions Court to obtain possession of the property. When the eviction matter first came before the General Sessions Court for hearing on December 7, 2020, the case was dismissed for failure to prosecute. 1 Public Homes got an attorney involved – not Mr. Russell – and

---

[2] David S. Connor alone filed the complaint in Adv. Pro. No. 21-90037, which included the violation of automatic stay claim. Mr. Connor and his wife, Courtney T. Connor, together filed a complaint in state court, which was subsequently removed to this court, commencing Adv. Pro. No. 21-90051, and consolidated with Adv. Pro. No. 21-90037. The complaint filed by both Connors included the trespass claim. The Court will generally refer to the complaints without distinguishing between them.

was able to have the dismissal set aside. As a part of the same order setting aside the dismissal, 1 Public Homes obtained a default judgment on January 4, 2021, for possession of the property. Mr. Russell was not involved in the detainer proceeding.

An eviction was scheduled for February 3, 2021, prompting Mr. Connor to file bankruptcy on January 28, 2021.

On Thursday, January 28, 2021, Mr. Connor's counsel sent Mr. Russell an email stating that he had been referred to Mr. Russell by the lawyer who had handled the detainer proceeding for the plaintiff and stated his understanding from the other lawyer that the client had retained Mr. Russell, a bankruptcy lawyer, to handle the matter going forward. Mr. Connor's counsel's email included the detainer proceeding case number, and a statement that Mr. Connor was interested in repurchasing the property. Mr. Russell responded saying "News to me," and said he would check with the client. That string of emails did not mention any scheduled eviction. (See Complaint, Doc. 1, ¶ 22; Ex. 7 to Compl., Doc. 1-7; Answer Doc. 57, ¶ 22).

Mr. Russell was, in fact, retained by Property Fund 629, LLC to represent it in Mr. Connor's bankruptcy.[3] This appears to have occurred sometime between the e-mail exchange on Thursday, January 28, 2021, and the following Monday, February 1, 2021. On that day Mr. Russell called Mr. Connor's counsel and informed him in a voicemail message that his client would like for Mr. Connor to make an offer. (See Compl. and Ans. ¶ 23; Ex. 9 to Compl.).

Mr. Russell's first communications with anyone about the eviction came two days later, on Wednesday, February 3, 2021. Mr. Russell went for a run that morning, and returned at approximately 9:55 a.m. He discovered he had received a voicemail from Courtney King, an attorney for Williamson County. In her voicemail, Ms. King informed Mr. Russell that there was to be an eviction of David Connor's

---

[3] It is not clear whether 1 Public Homes, LLC also retained Mr. Russell, but Mr. Russell's appearances in the bankruptcy case were on behalf of Property Fund 629, LLC.

property that day, and she asked Mr. Russell whether Property Fund 629, LLC intended to delay the eviction.

Mr. Russell then called the principals for Property Fund 629, LLC, but did not reach them or anyone else at the company. Between 10:00 a.m. and 10:30 a.m., Mr. Russell returned Ms. King's call and spoke with her. He informed Ms. King that he had not been involved in the eviction proceeding, and he had no authority or instructions from his client regarding the eviction. She informed him that the eviction had already begun and was then underway, and their conversation ended shortly thereafter.

Mr. Russell did not himself enter the Connors' property, and he did not direct the Williamson County Sherriff's Office to enter the property.

The foregoing facts are either undisputed or effectively undisputed by lack of admissible evidence to the contrary.

## DISCUSSION

### I. Standard of Review

A movant is entitled to summary judgment upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. When the movant is the defendant, he may prevail upon establishing that his "opponent cannot establish one or more elements of a claim and/or by demonstrating that the 'affirmative evidence negates an element of the non-moving party's claim.'" *Weiner v. Tivity Health, Inc.*, 528 F. Supp. 3d 795, 807 (M.D. Tenn. 2021) (quoting *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003)).

In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013). A factual dispute is "genuine" if a reasonable juror could return a verdict for the nonmoving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When an issue presents a mixed question of law and fact, the Court may appropriately dispose of it on summary judgment if the material facts are undisputed and questions of law predominate. *Univ. of Tenn. William F. Bowld Hosp. v. Wal-Mart Stores, Inc.*, 951 F. Supp. 724, 725–26 (W.D. Tenn. 1996) (citing *Anderson*, 477 U.S. at 248); *cf. U.S. Bank Nat'l Ass'n ex rel. CW Capital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, ___ U.S. ___, 138 S. Ct. 960, 967, 200 L. Ed. 2d 218 (2018) (Discussing appellate review of mixed questions: "[T]he standard of review for a mixed question all depends ... on whether answering it entails primarily legal or factual work."); *accord Barger v. United Bhd. of Carpenters & Joiners of Am.*, 3 F.4th 254, 262–63 (6th Cir. 2021)).

Factual assertions must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Proffered evidence must be admissible. Fed. R. Civ. P. 56(c)(2). Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence," and show competency to testify on the matters stated. *Id.* at 56(c)(4). Evidence that is inadmissible, such as hearsay, must be disregarded by the court. *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) ("[P]arties may resist a summary judgment motion by presenting evidence not in an admissible *form*, such as an affidavit, [but] the evidence itself still must be admissible."); s*ee also Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996) (Disregarding inadmissible hearsay in considering a summary judgment motion.).

As appropriate, a party may use the record citations to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.*; *see*

*also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986) (A moving party may satisfy its burden "by 'showing'—that is, pointing out to the ... court—that there is an absence of evidence to support the nonmoving party's case.").

Once a summary judgment movant has met his burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The nonmoving party must cite to "specific facts showing that there is a genuine issue for trial." *Haddad v. Gregg*, 910 F.3d 237, 243 (6th Cir. 2018) (citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted); *see also Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) ("The non-moving party, however, must provide more than mere allegations or denials ... without giving any significant probative evidence to support" its position.).

## II. Violation of the Automatic Stay

Mr. Russell seeks dismissal of Mr. Connor's claim that he violated the automatic stay. As an "automatic consequence" of filing bankruptcy, section 362 of the Bankruptcy Code imposes a stay on certain actions "that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *City of Chicago v. Fulton*, 141 S. Ct. 585, 589, 590 (2021). The Bankruptcy Code provides for damages for an individual injured by a willful violation of the automatic stay. *See* 11 U.S.C § 362(k)(1).

The plaintiff "seeking damages has the burden of establishing three elements by a preponderance of the evidence: (1) the action taken was in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages." *In re Mitchell*, 545 B.R. 209, 220 (Bankr. N.D. Ohio 2016); *see also In re McCormick*, No. 17-8039, 2018 WL 6787558, at *5 (B.A.P. 6th Cir. Dec. 26, 2018); *In re Webb*, 472 B.R. 665, 2012 WL 2329051 at *16 (B.A.P. 6th Cir. 2012).

Whether a defendant has willfully violated the automatic stay is a mixed question of law and fact. *See McCormick*, 2018 WL 6787558, at *2; *In re Baer*, No. 11-8062, 2012 WL 2368698 (B.A.P. 6th Cir. June 22, 2012).

With no act and no affirmative duty to act, Mr. Russell contends there can be no violation of the automatic stay. Mr. Connor responds that if Mr. Russell had instructed the Williamson County attorney on February 3 *not* to proceed with the eviction, he could have stopped the eviction. He does not directly address Mr. Russell's argument that he had no affirmative duty to act.

Considering the elements of a cause of action for violation of the automatic stay, the Court will consider first whether an action (or omission) was taken in violation of the automatic stay.

### A. Act or Omission in Violation of the Automatic Stay

Mr. Connor does not state which statutorily prohibited actions he alleges Mr. Russell took or failed to take, but the ones that seem potentially to apply to the eviction are:

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(2), (3). The parties do not dispute that, although title ownership may have been transferred prior to the petition date pursuant to the foreclosure sale, Mr. Connor retained possession of his residential property as of the petition date and his possessory interest was property of his bankruptcy estate. *See* 11 U.S.C. § 541.

Mr. Russell asserts he did not act to cause the eviction, and he had no affirmative duty to act to stop the eviction. It is undisputed by any admissible evidence that Mr. Russell did not act to cause the eviction. Not only did Mr. Russell not represent the eviction plaintiff (1 Public Homes, LLC) in the state court eviction proceedings, there is nothing in the record to indicate that Mr. Russell ever

Case 3:21-ap-90037    Doc 137    Filed 06/07/22    Entered 06/07/22 09:36:19    Desc Main
Document    Page 7 of 16

represented that entity (as opposed to the related entity of Property Fund 629, LLC on whose behalf he appeared in this Court).

Mr. Connor has long asserted that, after being informed of Mr. Connor's bankruptcy case, Mr. Russell instructed the Williamson County Sheriff's Office, either directly or through communication to the Williamson County attorney, to proceed with the eviction scheduled on February 3, 2021. (*See* Compl. ¶ 24; Plaintiff's Brief in Opposition to Summary Judgment, Doc. 110). However, Mr. Conner has presented no admissible evidence to prove the alleged instruction. The only evidence is Mr. Connor's declaration statement that the Williamson County Attorney told him that "Mr. Russell had instructed her to move forward with the eviction." (Connor Decl., Doc. 112, ¶ 3). Mr. Connor offers the Williamson County Attorney's statement "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). Therefore, the statement is hearsay and not admissible. *Id.*; Fed. R. Evid. 802. As inadmissible evidence, the Court may not consider it, and it does not serve to create a genuine dispute as to Mr. Russell's actions. *See Hartsel,* 87 F.3d at 803. The only admissible evidence is that Mr. Russell instructed no one to proceed with the eviction and took no action with respect to the eviction.

Mr. Russell argues that the inquiry should end here. He argues that § 362(a) prohibits *acts* and does not create affirmative duties to act, and thus with no action on his part, he cannot be liable. He relies in part on this statement from the Supreme Court in *Fulton*:

> Taken together, the most natural reading of these terms—"stay," "act," and "exercise control"—is that § 362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed.

*Fulton*, 141 S. Ct. at 590. However, the ultimate holding in *Fulton* was more narrow than Mr. Russell suggests.

In *Fulton*, the Supreme Court held that "mere retention of property after the filing of a bankruptcy does not violate § 362(a)(3) of the Bankruptcy Code," *Fulton*,

141 S. Ct. at 592, which prohibits "any act … to exercise control over property of the estate," 11 U.S.C. § 362(a)(3). The Supreme Court reasoned that an affirmative act was required to violate that particular subsection, and that if mere retention were sufficient, it would render surplusage the requirement of § 542 that an entity affirmatively relinquish control of a debtor's property. *Id.* at 591. *Fulton* appears to overrule prior cases within the Sixth Circuit that held that creditors had an affirmative duty to return vehicles repossessed before debtor's bankruptcy filing and that failure to return the vehicles resulted in a violation of the automatic stay. *See, e.g., TranSouth Fin. Corp. v. Sharon* (*In re Sharon*), 234 B.R. 676, 686 (B.A.P. 6th Cir. 1999) (Holding that a creditor violates the automatic stay by withholding possession of a Chapter 13 debtor's car after demand and tender of adequate protection.).

In *Fulton*, the Supreme Court left undisturbed a line of cases holding that other subsections of § 362(a) include an affirmative duty to act such that a failure to act would be considered a violation of the automatic stay. 141 S. Ct. at 590 (noting that "omissions can qualify as "acts" in certain contexts"); *see also In re Banks*, 253 B.R. 25, 31 (Bankr. E.D. Mich. 2000) ("[A] willful violation of the stay can be found from an act of omission and does not require an act of commission."). This is so when, for example, collection efforts put in motion by a creditor prior to bankruptcy will continue after bankruptcy unless stopped. *See, e.g., Webb*, 2012 WL 2329051 at *14 ("In instances in which a foreclosure sale has been put in motion pre-petition, creditors have an affirmative duty to stop the sale from continuing once they receive actual notice of a debtor's bankruptcy filing."); *In re Hardesty*, 442 B.R. 110, 114 (Bankr. N.D. Ohio 2010) ("For purposes of § 362(a), a creditor, once it receives notice of a debtor's bankruptcy, has an affirmative duty to take reasonable measures to ensure that the collection activities, which it set in motion, are discontinued.").

"To avoid violating § 362(a), a creditor is not only required to refrain from certain activity, but may be required to take affirmative action." *In re Horace*, No. 14-30103, 2015 WL 5145576, at *4 (Bankr. N.D. Ohio Aug. 28, 2015); *see also Webb*,

2012 WL 2329051, *15 ("[I]f a creditor has an affirmative duty to halt a pending state court action, failure to do so can result in a willful violation of the stay."). As the Sixth Circuit Bankruptcy Appellate Panel has cautioned:

> [It is] incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.

*In re Wohleber*, 596 B.R. 554, 572 (B.A.P. 6th Cir. 2019) (quoting *Webb*, 2012 WL 2329051 at *14, and *Banks*, 253 B.R. at 30).

Thus, Mr. Russell's reliance on *Fulton* is misguided since a post-petition eviction and dispossession of a debtor does not maintain the status quo in the same way as retaining possession of a vehicle repossessed prepetition. The debtor in *Fulton* did not have possession of the subject vehicle on the date the petition was filed. Failure to take the affirmative action of turning over a vehicle and thereby maintaining the status quo is quite different from failing to stop an eviction and thereby changing the status quo. A post-petition eviction changes the status quo that existed on the date of the bankruptcy, so *Fulton* cannot provide much guidance about what is required when a failure to stop an eviction will dramatically change the status quo.

The Court must therefore consider whether Mr. Russell in this particular situation had an affirmative duty to act to stop the eviction. In this case, Mr. Russell is not the creditor; he is an attorney representing a party. There is no doubt that, as an attorney, Mr. Russell could potentially be liable for violating the automatic stay for actions taken on behalf of his client. "Attorneys may be held liable for violations of the automatic stay as a result of actions they have taken or omissions they have made in representation of their clients." *Wohleber*, 596 B.R. at 563 n.6 (citing *In re Timbs*, 178 B.R. 989, 995 (Bankr. E.D. Tenn. 1994)).

Attorneys also may be found, along with their clients, to have an affirmative duty to act and to be liable for violating the automatic stay for failing to act. There is no defined test for determining when and how that obligation is triggered, but a review of cases in which attorneys were found to have affirmative duties shows that the facts of this case are distinguishable.

Typically, the attorneys who were found by courts within the Sixth Circuit to have an affirmative duty to act were involved with or responsible for pre-petition actions that set a metaphorical collection ball rolling and were fully aware that without action to stop it, the ball would continue rolling post-petition. *See, e.g., Wohleber*, 596 B.R. 556 (Attorney who had filed a motion for contempt, and who had obtained an order of contempt against the debtor on behalf of her client prior to debtor filing bankruptcy, had an affirmative duty to stop a state domestic court from imposing sanctions post-petition on the pre-petition contempt order.); *Timbs*, 178 B.R. 989 (Attorney, who obtained default judgment against debtor on behalf of creditor client, obtained a writ of execution, and commenced garnishment of debtor's wages prior to the petition date, was found liable for violating the automatic stay for not taking action to stop the garnishment after the bankruptcy was filed.); *In re Sams*, 106 B.R. 485 (Bankr. S.D. Ohio 1989) (Creditor and its lawyer who had commenced a foreclosure proceeding pre-petition were found liable for violating the automatic stay for not halting the scheduled foreclosure sale after the bankruptcy filing.).

Similarly, an affirmative duty has been found to arise after multiple notices to creditor's counsel of creditor's continuing post-petition collection efforts and a reasonable time to act. For example, in *In re Russell*, 441 B.R. 859 (Bankr. N.D. Ohio 2010), a creditor's counsel was found liable for violating the automatic stay by not taking action to stop creditor's post-petition garnishment of debtor's wages after multiple notices and requests from debtor's counsel. Creditor's counsel was found not to have any duty to act to stop the first post-petition garnishment, as it was reasonable to believe that the state court, which also had notice of the bankruptcy, would stop the garnishment. *Id.* at 861-862 (The court reasoned, "it is a familiar

maxim that the law does not require vain or useless acts."). But with notice of the second post-petition garnishment, an affirmative duty was found to have arisen on the part of creditor's counsel to stop the garnishment. *Id.* at 862. When creditor's counsel did nothing after the second garnishment and a third post-petition garnishment occurred, creditor's counsel was found liable for violating the automatic stay. *Id.*

The facts of this case are considerably different from others in which courts found a creditor's attorney had an affirmative duty to act such that a failure to act was considered a violation of the automatic stay. Contrary to most attorney affirmative duty cases, Mr. Russell was not responsible for setting the collection ball rolling by, in this case, obtaining the order of possession in the detainer proceeding or scheduling the eviction. Indeed, when Mr. Russell undertook representation after the bankruptcy was filed, it was on behalf of Property Fund 629, LLC, not the entity that had initiated the eviction process in state court.

Similarly, in contrast to the facts in the *In re Russell* case, Mr. Russell did not have several notices of post-petition collection actions by his client or a reasonable time to act. Several notices may not be required, but certainly a reasonable time to act after receiving notice is necessary for an affirmative duty to arise. *See In re Hardesty*, 442 B.R. 110, 115 (Bankr. N.D. Ohio 2010) ("While immediacy is not necessarily required, measures to halt ongoing collection activities must be brought by a creditor within a reasonable amount of time; otherwise, the delay in action stands to run afoul of § 362(a).").

In this case, even if Mr. Russell had some authority to act on behalf of the eviction plaintiff rather than the client he had begun representing shortly before the eviction, the timing created an untenable situation. Mr. Russell had no notice of the eviction until it was already underway. Notably, at no time between his first contact with Mr. Russell on January 28, 2021, until the eviction occurred on February 3, 2021, did Mr. Connor's counsel inform Mr. Russell of the scheduled eviction and ask

him to attempt to cancel it.[4] It was clear to Mr. Connor's counsel that Mr. Russell had just been retained by Property Fund 629, LLC on January 28, 2021, since, as it happened, Mr. Connor's counsel delivered the retention news to him. By the time Mr. Russell learned of the eviction on February 3, 2021, it was already occurring, and he had not yet had any communication with his client about it. He had no reason to know whether his client, rather than the creditor named in the possession order, 1 Public Homes, LLC, was responsible in any way for the eviction. Indeed, it is not at all clear that Mr. Russell could have stopped the eviction if he had tried at that point in the process.

Mr. Connor's approach to this subject would create a very troublesome situation for an attorney. Under that approach, an attorney would become liable for violating the automatic stay simultaneously upon learning of a collection action by his client of which he was previously unaware.

The Court concludes, based on the undisputed facts, that an affirmative duty did not arise instantaneously on February 3, 2021, for Mr. Russell to attempt to stop an eviction already in process without even being able to discuss the matter with his client. To the extent there was any affirmative obligation, Mr. Russell did not ignore the situation but instead did act promptly. Within a period of approximately 30 minutes after learning of the eviction from a voicemail from the Williamson County Attorney, Mr. Russell attempted to contact his client and he returned the Williamson County Attorney's call. Without any information or authority from his client, Mr. Russell could not reasonably provide any concrete instruction to stop the eviction, which, the Court notes again, was already in progress.

The Court is not prepared to create a bright line test to determine exactly what is enough and what is insufficient when it comes to affirmative obligations by an attorney in every scenario. Every situation is fact-specific. The situation here

---

[4] Based on the evidence presented, the only communications Mr. Connor had with Mr. Russell were (i) to inform Mr. Russell of bankruptcy filing and the state court detainer proceeding; and (ii) to receive Mr. Russell's communication that his client wanted Mr. Connor to make an offer prior to discussing a repurchase.

involved an attorney who had not initiated the eviction process, who learned of it when it was already underway, and who was unable to contact his client on a moment's notice to consult about what to do. As the court in *In re Russell*, recognized, "the law does not require vain or useless acts." 441 B.R. at 861-862. It likewise does not require precognition or clairvoyance. The law does require reasonable efforts, sometimes including taking affirmative action to stop something from happening, based on the totality of the circumstances. The Court is satisfied that Mr. Russell's actions, given the peculiar timing of everything that occurred in relation to his new and limited role in the matter, were sufficient under all the circumstances to avoid liability for violation of the automatic stay.

### B. Willfulness

The stay violation claim also fails for a lack of willfulness. A stay violation is willful when the creditor (i) knew of the stay and (ii) violated it by an intentional act. *In re Witham*, 579 B.R. 787, 792–93 (Bankr. E.D. Ky. 2017) (citing *In re Sharon*, 234 B.R. at 687–88. Where a creditor has received actual notice of the stay, the intentional nature of the violation is presumed. *Id.* (citations omitted). Specific intent, or lack thereof, to violate the stay is irrelevant to the "willfulness" inquiry. *Webb*, 2012 WL 2329051 at *15 (citing *In re Hill*, 222 B.R. 119, 123 (Bankr. N.D. Ohio 1998)).

In this case, willfulness is closely related to the absence of an affirmative duty. It is undisputed that Mr. Russell knew of Mr. Connor's bankruptcy case and thus was aware of the automatic stay as of January 28, 2021. That aspect of willfulness – knowledge of the stay – is undisputed. But the second part, violation of the stay by an intentional act, or more appropriately in this case, an intentional omission, is absent in this case.

Willfulness requires an intent to perform the act or an intentional decision not to act when one knows of an affirmative duty to act. The requisite intent is missing in this case. Within a span of 35 minutes, Mr. Russell learned of the eviction that was scheduled to occur that same day, attempted unsuccessfully to contact his client,

and, prior to hearing from his client, learned that the eviction was already under way. There is no indication that Mr. Russell even knew whether his client had ordered the eviction and had authority to stop it, and Mr. Russell denies that he had any authority from his client to act to stop the eviction at that point.

No reasonable juror would infer an awareness of an affirmative duty to act and an intentional decision not to act based on the facts presented.[5]

### C. Conclusion

Summary judgment is granted to Mr. Russell and the violation of automatic stay claim will be dismissed.

### III. Trespass

Mr. Russell also seeks dismissal of the trespass claim, which is the final remaining claim against him. "Trespass protects a landowner's right to exclusive possession," and "[a]ny unauthorized entry upon the property of another is a trespass." *Kauffman v. Forsythe*, 2021 WL 2102910, at *5 (Tenn. Ct. App. May 25, 2021) (citing *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988)); *see also Twenty Holdings, LLC v. Land S. TN, LLC*, 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019) ("The essence of the cause of action for trespass is an unauthorized entry onto the land of another." (quoting 7 American Law of Torts § 23:3)).

Trespass is an intentional tort, but the requisite intent is merely the intent to enter the property of another, "irrespective of whether the actor knows or should know that he or she is not entitled to enter." *Twenty Holdings, LLC*, 2019 WL 4200970, at *8 (quoting 75 Am. Jur. 2d Trespass § 23, and holding that negligent or reckless actions leading to entry did not satisfy the requisite intent).

---

[5] Mr. Connor uses Mr. Russell's argument in connection with his prior motion to dismiss that the eviction was excepted from the automatic stay by 11 U.S.C. § 362(b)(22) as proof that Mr. Russell chose not to act on February 3, 2021, because he believed the eviction was not subject to the stay. However, Mr. Russell's legal argument that Mr. Connor could not state a claim for violation of the automatic stay did not rest on any purported subjective belief by Mr. Russell on February 3, 2021. It was based on a pure legal proposition, rejected by the Court, that the eviction fit within the exception.

The fundamental element of a trespass claim is an entry on the property of the plaintiff, whether that be personally by the defendant or by a third person or thing that the defendant causes to enter the plaintiff's property. *See Shoffner v. CSX Transportation, Inc.*, 2013 WL 11521840, at *6 (E.D. Tenn. Mar. 26, 2013) (Tennessee law includes the possibility of trespass liability where the alleged trespasser "causes a thing or third person" to do the trespassing. (quoting Restatement (Second) of Torts § 158)).

Here, it is undisputed that Mr. Russell did not personally enter Mr. Connor's property. Likewise, Mr. Russell denies that he instructed the Williamson County Sherriff's department to enter Mr. Connor's property to effectuate the eviction. Although Mr. Connor *alleges* that Mr. Russell instructed the Sheriff's Office, directly or through the Williamson County Attorney, to proceed with the eviction and enter Mr. Connor's property, there is no admissible evidence to support that allegation. The only evidence Mr. Connor submitted is inadmissible hearsay, which the Court will not consider. *See Hartsel,* 87 F.3d at 803. Without admissible evidence to create a genuine dispute, the Court considers the lack of entry onto Mr. Connor's land by Mr. Russell, whether personally or by a third party, to be undisputed.

Without an entry, there can be no trespass.[6] Summary judgment is granted to Mr. Russell.

## IV. Conclusion

Summary judgment is granted to Mr. Russell on the two claims remaining against him: violation of the automatic stay, 11 U.S.C. § 362, and trespass. A separate order will be issued.

---

[6] Since there is no evidence of an entry, the Court need not address Mr. Russell's argument that *if* there was an entry, it was privileged.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.