
Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 6/7/2022



# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| David Silas Connor, | ) | Case No. 3:21-bk-00276 |
| | ) | Chapter 13 |
| Debtor. | ) | Judge Randal S. Mashburn |

___

| | | |
|---|---|---|
| | ) | |
| David Connor, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:21-ap-90037** |
| | ) | |
| Property Fund 629, LLC, 1 Public | ) | **(Lead Adversary Proceeding)** |
| Homes, LLC, Edward Dale Russell, | ) | |
| and Trent Notestine, | ) | |
| Defendants. | ) | |

___

| | | |
|---|---|---|
| | ) | |
| David S. Connor and | ) | |
| Courtney T. Connor, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:21-ap-90051 |
| | ) | |
| MEB Loan Trust IV (aka | ) | (Removed from Williamson County |
| Specialized Loan Servicing, LLC),[1] | ) | Circuit Court, Case No. 2021-100) |
| Edward Dale Russell, 1 Public | ) | |
| Homes, LLC, Property Fund 629, | ) | (Consolidated with 3:21-ap-90037) |
| LLC, Mackie Wolf Zientz & | ) | |
| Mann, P.C., and Eric Sox, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING TRENT NOTESTINE'S MOTION FOR SUMMARY JUDGMENT

___

[1] Specialized Loan Servicing, LLC ("SLS") was identified by the plaintiffs as a trade name of MEB Loan Trust IV; but according to SLS, it is a separate entity and separate defendant. Consistent with the Court's normal practice, the original case caption from the complaint is reflected in this ruling.

Trent Notestine is one of several defendants that plaintiff David Connor alleges were involved in and responsible for the allegedly wrongful eviction of Mr. Connor and his family from their home after a foreclosure sale.[2] Mr. Notestine, a lawyer, represented one of the parties seeking the Connors' eviction before a state court tribunal prior to Mr. Connor filing bankruptcy. For the reasons explained herein, Mr. Connor's claims against Mr. Notestine for abuse of process in the context of that eviction proceeding, negligence, fraud, and violation of the Fair Debt Collections Practices Act cannot be supported based on the undisputed facts and as a matter of law. Therefore, Mr. Notestine's motion for summary judgment must be granted.

## STANDARD OF REVIEW

A movant is entitled to summary judgment upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. When the movant is the defendant, he may prevail upon establishing that his "opponent cannot establish one or more elements of a claim and/or by demonstrating that the 'affirmative evidence negates an element of the non-moving party's claim.'" *Weiner v. Tivity Health, Inc.*, 528 F. Supp. 3d 795, 807 (M.D. Tenn. 2021) (quoting *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003)).

In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013). "If the evidence is merely colorable, or is not significantly probative, summary judgment

---

[2] Mr. Connor's wife, Courtney T. Connor, joined Mr. Connor in a state court lawsuit, subsequently consolidated with this one, against the other defendants whom the Connors accused of wrongful eviction and related claims. Mr. Connor alone asserted claims against Mr. Notestine.

may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986) (internal citations omitted).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Once a summary judgment movant has met his burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The nonmoving party must cite to "specific facts showing that there is a genuine issue for trial." *Haddad v. Gregg*, 910 F.3d 237, 243 (6th Cir. 2018) (citation omitted). A dispute is "genuine" if a reasonable juror could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## FACTS

In deciding this motion, the Court has considered the pleadings; the detainer/eviction-related documents attached to the Complaint; Mr. Notestine's Statement of Material Facts to which Mr. Connor did not respond; Mr. Notestine's declaration; Mr. Connor's declaration; and, to some extent, other supporting depositions, declarations, and discovery responses cited or relied upon by Mr. Connor. The following facts derive from these sources.

**Eviction Proceeding**

Mr. Connor and his wife owned and resided at property in Williamson County, Tennessee, for a period of years extending at least as far back as 2002. On November

5, 2020, the property was sold in a foreclosure sale to Property Fund 629, LLC. The property was conveyed to Property Fund 629, LLC by a substitute trustee's deed, which was recorded on November 20, 2020, with the Williamson County Register of Deeds. Mr. Notestine was not involved in the foreclosure process.

After the foreclosure sale, the Connors continued to occupy the property. On November 23, 2020, 1 Public Homes, LLC (a different entity from the successful buyer at foreclosure) filed a detainer warrant against Mr. Connor in the General Sessions Court for Williamson County seeking an order of possession. At that time, Property Fund 629, LLC was still the record owner. 1 Public Homes, LLC and Property Fund 629, LLC have the same chief manager and members.

In the section of the court form providing attorney information, the detainer warrant contains the main phone number for Mr. Notestine's law firm, but not Mr. Notestine's name or signature. Mr. Notestine denies any involvement in or awareness of the drafting and filing of the detainer warrant.

Through form language, checked boxes, and some handwritten information filling in blanks on the detainer warrant, the detainer plaintiff, 1 Public Homes, sought "possession of property" and claimed "that defendant(s) wrongfully possesses" such property, with the property address filled in by hand. (Doc. 1-5, Ex. to Compl.). The detainer warrant form also includes a statement that "[r]ent payments of *$3,500* are due on the *1st* day of each *month*," without stating any alleged unpaid amount. (Italicized words were handwritten.) Mr. Connor alleges this statement about rent being owed to be false and actionable. The detainer warrant includes a checked box for the detainer defendant to answer the claim by plaintiff "for a money judgment for rent." Finally, the detainer warrant includes the following form language: "Plaintiff asks for possession of the property, all unpaid rent owed as of the court date, restitution for damages to the property, attorney fees (if provided for in the contract), and all court costs and litigation taxes."

Mr. Notestine's first involvement in the eviction proceeding was to appear in General Sessions Court for the hearing set by the detainer warrant, on December 7, 2020. Mr. Connor did not appear. The eviction case was initially dismissed on December 7, 2020, and the dismissal reflects that the reason was "failure to prosecute." (Doc. 1-5). On or about December 17, 2020, Mr. Notestine filed a Motion to Set Aside Judgment and to Reset for Hearing, as it related to the dismissal order, arguing that at the time of the hearing the judge actually granted a default judgment, but that the clerk mistakenly marked the case for dismissal instead. ("Motion to Set Aside" at Doc. 1-6).[3] Mr. Notestine requested entry of a "default judgment for possession only;" he did not include a request for an award of any unpaid rent. On January 4, 2021, the General Sessions Court entered a default judgment "for possession." ("Default Judgment" at Doc. 1-6).

On March 2, 2021, after Mr. Connor filed bankruptcy, the General Sessions Court held a hearing on a motion filed by Mr. Connor's counsel that essentially requested that the court set aside the Default Judgment and reinstitute the dismissal. Mr. Notestine participated in that hearing.

After the hearing, by order entered March 5, 2021, the General Sessions Court found that the Default Judgment was "void ab initio" and ordered that the "operative, final order in this matter is the December 7, 2020 [dismissal order]." The General Sessions Court effectively set aside the Default Judgment and reinstated the dismissal order. Among other things, the March 5, 2021, order provides that the court's decision was based on a lack of proof of timely filing of the Motion to Set Aside and notice to Mr. Connor.

This is the extent of Mr. Notestine's involvement in the detainer proceeding and the Connors' eviction.

---

[3] The actual filing of the Motion was at issue at the March 2, 2021, hearing in General Sessions Court due to the lack of a file stamp, but it cannot be disputed that it was received by the General Sessions Court, since that court's order was hand-written on a copy of the Motion. Whether the Motion was actually filed and when are not at issue in this case.

### Mr. Notestine's Law Practice and Client Relationships

Mr. Notestine is an attorney with the Notestine Law Firm, which includes Mr. Notestine and Robert J. Notestine III (Trent Notestine's father). Mr. Notestine has never had an attorney-client relationship with Mr. Connor. Mr. Notestine had no direct communications with Mr. Connor, and he never made any statement or representation to Mr. Connor.

Property Fund 629, LLC and 1 Public Homes, LLC were clients of the Notestine Law Firm. Eric Sox, a member and manager of both LLCs, testified in his deposition that the LLCs had an oral agreement with Mr. Notestine's father that the father would appear to represent the LLCs at hearings on detainer warrants that the LLCs prepared and filed. Sometimes the father would appear, and other times Mr. Notestine would appear, but Mr. Sox stated the agreement was with the father. Mr. Sox testified in his deposition that he had not had any communications with Trent Notestine about the Connor detainer warrant prior to the hearing.

### Mr. Connor's Responsive Facts

Mr. Connor did not file a response to Mr. Notestine's statement of material facts as required by LBR 7056-1(b), so the Court considers Mr. Notestine's statement of material facts to be undisputed.

Mr. Connor also did not file his own supplemental statement of any facts that he asserts are material and disputed and provide Mr. Notestine with an opportunity to respond to them, as required by LBR 7056-1(b). In his brief, Mr. Connor did cite to documents attached to the Complaint and to filings made by Mr. Notestine in support of the summary judgment motion. He also submitted his own declaration stating that he did not know who or what 1 Public Homes LLC was prior to the litigation; that he did not receive notice of the January 4, 2021, hearing; that he did not receive a debt validation notice from Mr. Notestine; and that he did not owe

anyone $3,500.[4]  Notwithstanding the lack of separate statement of disputed facts, the Court has considered Mr. Connor's record citations, and finds that none of his additional facts create any genuine dispute that would preclude summary judgment.

## DISCUSSION

The broader allegations of this case against all defendants are that Mr. Connor and his wife did not receive notice of the foreclosure sale of their property, notice of the eviction detainer proceeding in state court, or notice of what was essentially a motion in the detainer proceeding for a default judgment.  They also assert that proceeding with the eviction after Mr. Connor commenced his bankruptcy case was a violation of the automatic stay.  The Connors have sued every company, lawyer, or other person whom they could identify as having any role in the foreclosure or the eviction, including Mr. Notestine, whose role was very limited.

After the detainer proceeding had been commenced by the filing of a detainer warrant without the knowledge or involvement of Mr. Notestine, Mr. Notestine appeared at the hearing on the detainer warrant on behalf of his client.  After the state court had entered an order dismissing the case for want of prosecution, Mr. Notestine filed a motion to set aside the dismissal and replace it with a default judgment, which the state court initially granted.  The judgment he requested and obtained was for possession only, not monetary damages.

The Connors subsequently sought to void the default judgment based on lack of notice and reinstitution of the dismissal order.  The state court conducted a hearing, which Mr. Notestine participated in, and this time the Connors won their motion and obtained an order voiding the default judgment and dismissing the detainer proceeding based on the notice problem.  Typically, this is the remedy a party

---

[4] Mr. Connor's declaration included another statement that he was "injured and harmed as a result of the default order Trent Notestine obtained for 1 Public Homes LLC." The Court considers this last statement to be conclusory in nature and has disregarded it.

would expect to receive when lack of notice of a motion is asserted – relief from any order entered in connection with that motion. Mr. Connor wants much more.

Despite Mr. Notestine's very limited involvement in the detainer proceeding, Mr. Connor has asserted tort claims against Mr. Notestine (abuse of process, negligence, and fraud) and a claim based on the Fair Debt Collections Practices Act. For the reasons set forth below and based on the undisputed facts, Mr. Connor cannot make any of these claims stick.

### I. Abuse of Process

In Tennessee, there are two tort actions for the alleged misuse of legal process by another: malicious prosecution and abuse of process. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999). The two torts are distinct. Whereas malicious prosecution involves the improper *issuance* of process, abuse of process involves the improper *use* of process *after* it has been issued. *Id.*

To establish a claim for abuse of process, Tennessee law requires satisfaction of two elements: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Id.* (quoting *Priest v. Union Agency*, 125 S.W.2d 142, 143 (1939)). With regard to the second element, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Id.* (internal quotations omitted).

The undisputed facts show that Mr. Notestine did not initiate the eviction matter but was involved at one stage of the General Sessions Court litigation in obtaining the "process," which in this case was the Default Judgment/order of possession. However, he had no involvement with the use – or abuse – of that process after its issuance to evict Mr. Connor and his family. Mr. Connor's arguments in opposition to summary judgment and his proffered evidence involve the proceedings

before the General Sessions Court, in which Mr. Connor alleges that, among other things, Mr. Notestine misrepresented how he served his Motion to Set Aside on Mr. Connor.[5] These facts relate to the obtaining of the order of possession, not any use – or abuse – by Mr. Notestine after its issuance. Thus, Mr. Connor cannot establish the second element of an abuse of process claim, an improper *use* of the process *after* it had been issued.[6]

Without an improper use of process, whether the defendant had an ulterior motive is immaterial. *Priest*, 125 S.W.2d at 143 (citing 1 Am.Jur., Abuse of Process, § 6, p. 178, 179); *see also Weiner*, 528 F. Supp. 3d at 807 (A defendant seeking summary judgment need only negate one element of a claim.).

Since Mr. Connor cannot establish an essential element of his abuse of process claim, Mr. Notestine is entitled to summary judgment.

## II. Negligence

Mr. Connor's claim of negligence requires proof of five elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (citations omitted). The existence of a duty of care is an essential element. *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005). "Whether the defendant

---

[5] Among other things, Mr. Connor complains of loss of due process in connection with the General Sessions case, but that is not a matter for this Court to correct or punish. It amounts to a collateral attack on the state court's order of possession. Additionally, Mr. Connor already succeeded before the state court by convincing that court to void the order of possession. Mr. Connor has not shown that Mr. Notestine's actions in the state court satisfy the elements of any of his proffered tort claims.

[6] Mr. Connor's broader allegations in the Complaint are that various defendants, not Mr. Notestine, used the order of possession to evict Mr. Connor and his family. The Court notes that eviction is the very purpose of a detainer action and order of possession. Without additional facts demonstrating that the order of possession was used to coerce some other, collateral benefit from Mr. Connor or his family, the abuse of process claim also fails for lack of any "improper" use of the process. *See Bell*, 986 S.W.2d at 555.

owed the plaintiffs a duty of care is a question of law to be determined by the court." *Id.*

This case involves the assertion of negligence against an attorney by a non-client, third party. As a general rule, "an attorney is not liable for negligence to third parties who are not clients and are not in privity of contract with the attorney." *Stinson v. Brand*, 738 S.W.2d 186, 190 (Tenn. 1987). As with many rules, there is an exception. Tennessee recognizes that attorneys, like other professionals, may be liable for "negligently supply[ing] false information for the guidance of others in their business transactions." *Stinson*, 738 S.W.2 at 190.

This theory of "negligent misrepresentation" liability derives from the Restatement (Second) of Torts § 552, which Tennessee has adopted.[7] *See Tartera v. Palumbo*, 453 S.W.2d 780, 784 (Tenn. 1970) (adopting the Restatement); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997).

As the claim relates to attorneys specifically, Tennessee law provides that an attorney may be liable, despite the lack of contractual privity, when:

---

[7] The Restatement provides, in pertinent part, as follows:

> (1) One who, in the course of his ... profession ..., supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts, § 552 (1977) (emphasis added), *quoted in Robinson*, 952 S.W.2d at 427.

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2) the defendant supplies faulty information meant to guide others in their business transactions; and

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*Robinson*, 952 S.W.2d at 427 (quoting *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991)).

There are two sets of alleged misrepresentations in this case. First, Mr. Connor seeks to hold Mr. Notestine liable for the content of the detainer warrant itself, which Mr. Connor asserts misrepresents the title owner of the property and misrepresents that Mr. Connor owed rent of $3,500 per month.

The second set of misrepresentations are those made by Mr. Notestine himself. Mr. Connor seeks to hold Mr. Notestine liable for alleged misrepresentations that Mr. Notestine made to the General Sessions Court about how and when he served Mr. Connor with notice of his Motion to Set Aside the initial order dismissing the detainer proceeding.

There are underlying issues with all the misrepresentation allegations. As for the detainer warrant itself, the only evidence before the Court is that Mr. Notestine did not draft the detainer warrant or know who did. His signature does not appear on the detainer warrant.[8] As it relates to the representation regarding rent, the relief

---

[8] In response to Mr. Notestine's argument that he was not involved in the initiation of the detainer action, Mr. Conner contends that the LLCs had an agreement with Mr. Notestine's father that the firm would represent them in detainer actions that the LLCs themselves filed without the signature of an attorney. Mr. Conner contends this arrangement is improper and that, based on the impropriety, Mr. Notestine should be held responsible for any misrepresentations in the filing by his client. These allegations raise potential concerns about an attorney arguably aiding a corporate entity in the unauthorized practice of law, an attorney's responsibility to a tribunal, and professional ethics. However, these concerns are outside the scope of this litigation and do not lend support to any of the specific tort claims asserted.

Mr. Notestine sought was for possession of the property based on the foreclosure, so any statement about rent was not material to the relief sought or obtained.

As for the representations to the General Sessions Court about service, the only evidence of these misrepresentations is that Mr. Notestine admitted in the General Sessions Court hearing that he did not serve the Motion on Mr. Connor by email, claiming that to have been a mistake in the Certificate of Service on the Motion. The only "evidence" Mr. Connor presented that Mr. Notestine misrepresented to the General Sessions Court that he served Mr. Connor with the motion by mail is a conclusory statement in a General Sessions Court order, which was drafted by Mr. Connor's counsel and not supported by the hearing transcript. The hearing transcript may be considered evidence only to the extent of party admissions by Mr. Notestine. Mr. Connor has not argued or provided support for any finding by the General Sessions Court having any preclusive effect in this litigation.

Regardless of any of these evidentiary issues or the sufficiency of any factual foundation relating to the misrepresentation claims, there are several more fundamental legal flaws in Mr. Connor's theory. First, all of the representations were made in the context of litigation, not in the context of a business transaction for the purpose of guiding others in that transaction. *Robinson*, 952 S.W.2d at 427.

Second, an attorney is only liable to "the person … for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it." Restatement (Second) of Torts § 552, *quoted in Akins v. Edmondson*, 207 S.W.3d 300, 307 (Tenn. Ct. App. 2006). Mr. Connor admits the alleged misrepresentations were not made to him. They were made to a state court for the purpose of obtaining possession of property held by Mr. Connor and/or allegedly a monetary judgment against him. Mr. Notestine was acting adverse to Mr. Connor. No reasonable juror would conclude that Mr. Notestine intended statements about service of his motion to be for Mr. Connor's benefit or guidance. The same applies to

any statement in the detainer warrant for which Mr. Notestine might be held responsible.

Third, an attorney is only liable if the person to whom he intended to provide the information justifiably relies upon it. *Robinson*, 952 S.W.2d at 427. Mr. Connor admits that none of the alleged misrepresentations were made to him. In fact, he claims not to have even been aware of the detainer warrant filing and related hearing, or the Motion to Set Aside and hearing on that Motion. Mr. Connor has not shown that he relied on the misrepresentations in any way, and given his lack of awareness of them, no reasonable juror would conclude that he did.

The undisputed facts do not support a claim of negligence against Mr. Notestine by Mr. Connor, a non-client, and Mr. Notestine is entitled to summary judgment.

### III. Fraud / Intentional Misrepresentation

Mr. Connor also alleges the misrepresentations discussed above were intentional and amounted to fraud. To recover for fraud or intentional misrepresentation,[9] a plaintiff must prove: "(1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation." *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012).

---

[9] Fraud, intentional misrepresentation, and fraudulent misrepresentation are different names for the same causes of action under Tennessee law. *Hodge*, 382 S.W.3d at 342. The Tennessee Supreme Court has expressed a preference for referring to the claim as "intentional misrepresentation," and this Court will follow suit. *See id.* at 343 (suggesting that "[intentional misrepresentation] term should be used exclusively henceforth").

Mr. Notestine argues that, as with the negligent misrepresentation claim, Mr. Connor's lack of reliance on any alleged misrepresentation dooms his intentional misrepresentation claim. The Court agrees. "A false representation alone does not amount to fraud; there must be a showing by plaintiff that the representation was relied on by him or her, and that the reliance was reasonable under the circumstances." *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009). Mr. Connor admits that Mr. Notestine made no representation to him. All of the alleged misrepresentations were made in court proceedings about which Mr. Connor claims not to have been aware of at the time they were occurring (i.e., the detainer warrant and subsequent hearing, and the Motion to Set Aside and subsequent hearing). Mr. Connor's declaration submitted in opposition to summary judgment did not include any sworn statement of reliance. No reasonable juror would conclude that Mr. Connor relied on any of the alleged misrepresentations, of which he claims to have been unaware.

Because Mr. Connor cannot establish an essential element of his claim, the Court need not consider the other factors of his intentional misrepresentation claim. Mr. Notestine is entitled to summary judgment.

### IV. Fair Debt Collections Practices Act

Finally, Mr. Connor asserts that Mr. Notestine has violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq. The FDCPA is intended "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Specifically, Mr. Connor alleges that Mr. Notestine made false or misleading representations in an attempt to collect rent, which Mr. Connor alleges violated several sections of the FDCPA. (See generally, Doc. 1, Complaint ¶¶ 68-71). Mr. Notestine asserts that Mr. Connor's claim is deficient for lack of a "debt," a "debt

collector," or any violative conduct. The deficiency the Court finds most glaring is the lack of any injury caused by the alleged violation of the FDCPA.

Whether a party has standing is an issue of the court's subject matter jurisdiction, which the court may review at any time and on its own initiative. *See BN1 Telecommunications, Inc. v. Lomaz* (*In re BN1 Telecommunications, Inc.*), 246 B.R. 845, 848 (B.A.P. 6th Cir. 2000). The standard, Article III requirements for standing apply to FDCPA claims. *See Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018). At a minimum, the plaintiff must show (1) a particular and concrete injury (2) caused by the defendant's wrongdoing, and (3) redressable by the court. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The plaintiff bears the burden of establishing standing for each claim he asserts. *Id.*

Sixth Circuit authority is clear that "[t]o satisfy the injury in fact requirement, the [plaintiff] must point to some harm other than the fact of 'a bare procedural violation'" of the FDCPA. *Hagy*, 882 F.3d at 620 (quoting *Spokeo, Inc. v. Robins*, ––– U.S. –––, 136 S. Ct. 1540, 1550 (2016)); *see also Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017) (Stating with regard to an FDCPA claim, "[t]his circuit has had the occasion to interpret *Spokeo* and has concluded that a statutory violation in and of itself is insufficient to establish standing."). Plaintiff must show a cognizable injury in fact caused by the defendant's violation of the FDCPA to withstand Article III review, and the availability of statutory damages will not suffice. *See Hagy,* 882 F.3d at 623.

The alleged violation of the FDCPA in this case is the inclusion of a statement in the detainer warrant that rent of $3,500 was due on the first of each month combined with detainer plaintiff 1 Public Homes' request, through form language on the detainer warrant, for a money judgment for unpaid rent. Mr. Connor has not shown, or even alleged, any concrete harm caused by that allegedly false statement.

It is undisputed that the alleged misrepresentation in the detainer warrant that $3,500 in rent was due did not result in a judgment for monetary damages. The judgment obtained was for possession of the property only. The award of possession was clearly based on a different allegation in the detainer warrant that a foreclosure had occurred, which is not alleged to be false. Mr. Connor has alleged injuries caused by the Default Judgment in the eviction of his family and the expense incurred in setting aside or voiding the judgment. But no reasonable juror would find those injuries to have been caused by the alleged misrepresentation about monthly rent being owed.

With no concrete injury caused by the alleged violation of the FDCPA, Mr. Connor's FDCPA claim is dismissed for lack of standing. The Court need not address Mr. Notestine's arguments about additional deficiencies in Mr. Connor's claim.

## CONCLUSION

For the reasons discussed herein, Trent Notestine is entitled to summary judgment and dismissal of all claims against him. A separate order will be issued.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.